Max S. Morgan, Esquire (admitted *pro hac vice*)
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr. (admitted *pro hac vice*)
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*tom@attorneyzim.com*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ELI REISMAN, *individually, and on behalf of himself and others similarly situated*,<br><br>   *Plaintiff*,<br>v.<br><br>GEN DIGITAL, INC.,<br><br>   *Defendant*. | Case No. 2:25-cv-01653-PHX-SPL<br><br>**AMENDED COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.  This action arises out of the illegal marketing practices of Defendant Gen Digital, Inc. ("Gen Digital" or "Defendant") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.  Gen Digital operates a family of brands, including but not limited to Norton, Avast, LifeLock, Avira, AVG, ReputationDefender and CCleaner, that purport to provide products and services relating to cybersecurity, privacy, and identity protection.[1]

3.  As of March 29, 2024, Gen Digital had "approximately 500 million total

---

[1] *See* Gen Digital Inc. Annual 10-K Report (May 16, 2024) available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/849399/000084939924000036/gen-20240329.htm

1  users, which come from direct, indirect and freemium channels."[2]

2  4.     One of the "key elements" to Gen Digital's growth strategy is to grow its

3  customer base through multiple channels.  Gen Digital's 2024 Annual Report explains:

> **Grow our customer base through multiple channels**: We
> have multiple go-to-market channels to reach new customers
> globally, including direct-to-customer, indirect partnerships
> and freemium. We intend to leverage our expertise in digital
> marketing, as well as existing and new strategic partnerships,
> to grow our customer base. We believe that continued
> investments in these areas, as well as our product offerings and
> infrastructure, will allow us to further enhance our leading
> brands and superior products, increase awareness of our
> consumer services and enhance our ability to efficiently
> acquire new customers.[3]

5.     Gen Digital engages in direct-to-consumer advertising.  Gen Digital's 2024
Annual Report explains:

> **Direct-to-consumer channel**: We use advertising to elevate
> our family of brands, attract new customers and generate
> significant demand for our services. Our direct subscriptions
> are primarily sold through our e-commerce platform and
> mobile apps, and we have a direct billing relationship with the
> majority of these customers.[4]

6.     Gen Digital relies on third-party affiliate marketing to refer prospective
customers to Gen Digital so that Gen Digital can sell them its products and services.[5]  Gen
Digital's 2024 Annual Report explains:

> **Indirect partner distribution channels**: We use strategic and
> affiliate partner distribution channels to refer prospective
> customers to us and expand our reach to our partners' and
> affiliates' customer bases. We developed and implemented a
> global partner sales organization that targets new, as well as
> existing, partners to enhance our partner distribution channels.
> These channels include retailers, telecom service providers,
> hardware OEMs, employee benefit providers, strategic
> partners, and small offices, home offices and very small

---

[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *See id.*

businesses. Physical retail and OEM partners represent a small portion of our distribution, which minimizes the impact of supply chain disruptions.[6]

7.     Gen Digital and its affiliates and partners sent illegal telemarketing text messages on behalf of Gen Digital to Plaintiff's and Class members' residential cell phones.

8.     Gen Digital and it affiliates and partners continue to send illegal telemarketing text messages even after Gen Digital receives requests from the texted party requesting that Gen Digital stop sending its text messages.

9.     Gen Digital has been aware of this practice and, as demonstrated by the continued messages to Plaintiff, has allowed it to continue because it financially benefits Gen Digital and its shareholders.

10.     Accordingly, Plaintiff brings this action on behalf of himself and a Class of similarly situated individuals.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12.     This Court has jurisdiction over Gen Digital because Gen Digital conducts business transactions in this District and is headquartered in this District.

13.     Venue is proper in this District because Gen Digital is headquartered in this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed from this District.

## PARTIES

14.     Plaintiff Eli Reisman ("Mr. Reisman" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Edison, New Jersey.

15.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by

---

[6] *Id.*

47 U.S.C. § 153(39).

16.    Gen Digital is, and at all times mentioned herein was, a corporation organized and existing under the laws of the state of Delaware with a principal office address located at 60 E. Rio Salado Parkway, Suite 1000, Tempe, Arizona 85281.

17.    Gen Digital may be served via its registered agent, Corporation Service Company located at 251 Little Falls Drive, Wilmington, Delaware 19808.

18.    Gen Digital is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

19.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.    In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

### *National Do-Not-Call Registry*

20.    The TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

21.    These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1)-(2).

22.    Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

23.    A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call, pursuant to § 227(c) of the TCPA.

### *Internal Do Not Call Regulations*

24.    The TCPA also required the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

25.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." *Id.* at § 227(c)(1)(A), (E).

26.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

27.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

28.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

29.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

30.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1), (2), (3), (6).

31.    These regulations prohibit a company from making calls for telemarketing

purposes[7] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

32.    Accordingly, all telemarketing calls violate the TCPA, unless Gen Digital can demonstrate that it has implemented the required policies and procedures.

33.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c) of the TCPA:

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

34.    A company must comply with the procedures for the company-specific do-not-call list. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

35.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

---

[7] There is a distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 C.F.R. §64.1200(f)(14), which can be established by a "voluntary two-way communication." 47 C.F.R. § 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 C.F.R. § 64.1200(f)(5)(i). "Telemarketing purposes," on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 C.F.R. § 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the National Do-Not-Call Registry provisions with respect to persons with whom it does not have an existing established business relationship.

36.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g.*, *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

37.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

38.     Finally, text messages, such as the ones sent by Gen Digital, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

39.     Plaintiff is the user of his personal cellular telephone number (848)-XXX-0570.

40.     Plaintiff's cellular telephone number has been registered on the National Do-Not-Call Registry since July 19, 2023.

41.     Plaintiff registered his telephone number on the National Do-Not-Call Registry because he did not want unsolicited telemarketing calls and text messages, such as the ones at issue in this case.

42.     On or about October 16, 2023, as shown below, Plaintiff began receiving telemarketing text messages from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



43.     The message appeared to come from telephone number (514) 589-0816.[8]

44.     The message included a link, that when clicked directed Plaintiff's telephone browser to Avast.com, a website operated by Gen Digital:

---

[8] Upon information and belief, all of the telephone numbers identified on Plaintiff's and Class members' caller IDs were "spoofed" to conceal the identity of the caller. "Spoofing occurs when caller ID information is manipulated or altered to display anything other than the originating telephone number. The Truth in Caller ID Act of 2009 and the Commission rules prohibit any individual from falsifying or misrepresenting his or her caller ID information with the intent to defraud, cause harm, or wrongfully obtain anything of value." *In the Matter of Affordable Enterprises of Arizona, LLC.*, 35 F.C.C. Rcd. 12142, 12142 (2020).



45.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Avast.

46.    Upon information and belief, the full uniform resource locator (URL) includes information sufficient for Gen Digital to identify the particular partner affiliate that sent the message on Gen Digital's behalf.  The complete URL for this text message is as follows:

https://www.avast.com/en-us/lp-aff-consumer-business-store-page-inf709?irclickid=TCGyI00TpxyPWbPUtF1bfymMUkFTi2WAvwwnyA0&irgwc=1&utm_medium=affiliate&utm_source=impact&utm_campaign=18249&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFTi2WAvwwnyA0&utm_content=1585188&IRID=2462623&programType=Impact&TrafficSource=Affiliate&partnerID=2462623#android

47.     Upon information and belief, Gen Digital uses the information contained within the URL to determine and track where customers came from so that Gen Digital can credit its partner affiliates with a money payment for driving potential customers to its website.

48.     Upon information and belief, Gen Digital provided its affiliate or partner with this code and instructed the affiliate or partner to use the code in the links it included in its text messages so that Gen Digital could track the performance of the affiliate or partner's marketing efforts.

49.     Upon information and belief, by providing the affiliate or partner with this code and instructions, Gen Digital was fully aware of and authorized the marketing done by the affiliate or partner on Gen Digital's behalf.

50.     Upon information and belief, Gen Digital can immediately identify the affiliate or partner associated with the code and take disciplinary action if Gen Digital was inclined to do so. Gen Digital could also discontinue its business with the affiliate or partner by refusing to pay compensation.

51.     Plaintiff investigated the message to determine if it was a scam or was in fact a marketing campaign run by Gen Digital.

52.     On October 18, 2023, Plaintiff contacted Gen Digital to bring the matter to Gen Digital's attention, and Plaintiff advised that the message was unwanted, upsetting, and deceptive.

53.     Plaintiff provided Gen Digital with a copy of the text message he received, as well as the links he encountered that included the affiliate or partner identification identified above.

54.     On October 23, 2023, Plaintiff received the following response from Gen Digital's litigation counsel:

**From:** Ryan Wilkins (CS) <█████████████>
**Sent:** Monday, October 23, 2023 9:12 AM
**To:** Eli Reisman <███████████>
**Subject:** Follow-up: Text Message

Good morning, Eli –

My colleague █████████ forwarded me your inquiry regarding an unsolicited text message you received. We are sorry and are looking into this – I understand from personal experience how these unwanted texts can be frustrating. In all likelihood, the text was sent by a third-party marketing affiliate which itself had access to your phone number. (Gen does not send text-message solicitations and strictly forbids this practice among its marketing vendors.)

While this is not common, it has happened before, and our practice is to work internally to identify the sender and have them removed from our marketing-affiliate platform.

I understand you have already had your subscription cancelled and refunded. If you like, I'd be happy to look into offering you a free year of services as a customer-service gesture for this inconvenience.

We appreciate your outreach and look forward to assisting you on this matter.

Sincerely,

Ryan

Ryan Wilkins
Litigation Counsel

55.     Gen Digital's litigation counsel alleged that, "[i]n all likelihood, the text was sent by a third-party marketing affiliate which itself had access to your phone number." Gen Digital did not provide any supporting documentation for this assertion.

56.     Gen Digital's litigation counsel commented that "it has happened before." Thus, Gen Digital knew that consumers were being sent unwanted text messages advertising its products in violation of the TCPA.

57.     Plaintiff informed Gen Digital's litigation counsel that he believed he received multiple unwanted messages from the same affiliate partner, despite instructing that the unwanted messages stop.

58.     Despite receiving Plaintiff's complaints, Gen Digital took no action to contact its affiliate partners and instruct them not to send unsolicited text messages to individuals, including Plaintiff and other individuals who requested that the text messages stop.

59.    Based on the affiliate or partner identification included in the message, Gen Digital could have immediately identified the third party that sent the message and taken corrective action, but chose not to. This is demonstrated by the continued text messages Plaintiff received after the email from Gen Digital.

60.    Gen Digital took no action and allowed the unlawful conduct to continue because it was in Gen Digital's financial interest to ignore the illegal activity and profit from it. Scaring potential customers into buying its products with alarming but false claims of vulnerabilities and threats is an effective way to sell Defendant's security products even if it is deceptive and violates the TCPA.

61.    As of October 23, 2023, it was Gen Digital's pattern and practice to respond to complaints in the way Gen Digital responded to Plaintiff, to deny responsibility, and to refuse to take appropriate action to make the activities stop.

62.    On October 25, 2023, just days after making his complaint to Gen Digital and corresponding with its legal counsel, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:



63.     When Plaintiff clicked the link, it directed his browser to a website advertising a Norton product:[9]



64.     Norton is one of Gen Digital's brands.

65.     The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Norton.

66.     When Plaintiff clicked on the "Start Clean" button, he was directed to a Norton webpage to buy one of Defendant's products:[10]

---

[9] The website URL is as follow:
https://berylliumreporters.xyz/ht/atv3/v4/?oid=2240&dom=urbstchoice.com&lpkey=167598e92
7f6566288&uclick=1ma7k29l&uclickhash=1ma7k29l-1ma7k29l-168wbl-xsikdz-hea63y-
hea0g6-hea09z-c7de5d#!/index
[10] https://buy.norton.com/estore/checkOutV2/CartV3/true



67.     Because the URL at the Gen Digital website did not include a partner or affiliate identification code, the text message must have been sent by Gen Digital itself or a third party who was directly instructed by Gen Digital to send the text message, as it would not need to track the source of the message to compensate a partner for the delivery of a customer to its website.

68.     Alternatively, the text message was sent by one of Gen Digital's unidentified affiliate marketers and Gen Digital has other means to track and compensate the affiliate marketer other than tracking a code in a link, such as a dedicated landing page that only that affiliate could use, or prior payment for ad placement.

69.     On October 27, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:

70.    When Plaintiff clicked the link, it directed his browser to a website advertising a Norton product:[11]

---

[11] The website URL is as follows:
https://specialgivaways.com/av/norton/v1/?cep=0JXchs2gxlVe7UMB3IGq6PtuuN2-
_63Or47MLYk_7bRwh3mmQZ118cTUEwxDRrua3MdCSzIcBMdinGu5PMeD6FP7HEr36rv7
RHnnmM8C9rndO67BjqHwMhx3fRikbu4WUqlpuAUvphr0Vgvse3k_K9RKrBeqIZ_Ha_uXFvz
sqjlhlIjVHn8rvshKik8lLrOgyAb1eOjH8u39I7l9ljJFLFyrjmuRwUHzRJRMEirhybuykBiQVLVF
YL94gGVYqPPPRoazGW8v1F3mLkmCDtPF0u_LIhVAsCQbZo74w2-
foQ_8GmntPCkVI4Atak8cVjHthRvhABG2YXfdGI6Gb0fq8C51LdmYYWn0z6vV1hoQHU-
5spA6sI7XqDozWvEwtcTsshnoHfHEh2IjMfu25H4AYBokv8Bfo4OyH_rfRSIHcq3SsU9eGQy
X3mzhpQ78bI7B-
Cc99DuOiwxdvmmwt0jP6_g&lptoken=16d3983f832f9395495f&target=ts3859-sms-av-
us&cpv=0.29&externalid=1698837548.498893-203110817-86965#!/hst



71.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Norton.

72.    When Plaintiff clicked on the "Repair Now" button, he was directed to a Norton webpage to buy one of Defendant's products:[12]

---

[12] https://buy.norton.com/estore/checkOutV2/CartV3/true

1
2
3
4
5
6
7
8
9
10
11
12



13    73.    Because the URL at the Gen Digital website did not include a partner or
14    affiliate identification code, the text message must have been sent by Gen Digital itself or
15    at Gen Digital's express instruction, as it would not need to track the source of the message
16    to compensate a partner for the delivery of a customer to its website.

17    74.    Alternatively, the text message was sent by one of Gen Digital's unidentified
18    affiliate marketers and Gen Digital has other means to track and compensate the affiliate
19    marketer other than tracking a code in a link.

20    75.    On November 1, 2023, as shown below, Plaintiff received another
21    telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate
22    marketers:

23
24
25
26
27
28

76. When Plaintiff clicked the link, it directed his browser to a website advertising an AVG product:[13]

---

[13] The website URL is as follows:

https://lifetricksdaily.com/vpn/v6/index.php?cep=_040kEzZjNQvQMVX1I_ZzAFJ9vBdo0Jzla
mPOrDLUFBw8u7HSYH8YMWswLKf6xY6LVYBQHkSs1qU3VXjxEmgyfOANcMiOUtq7bf
yMzuWkZAXQuI8GTvu2OgIc0zjxv7xsyd_MXyc4JuQHFKa6VZiTAgfTAPuhwvvKm7O1LjPv
mRADwkgdfNvXAi6QEZlIq0bndZASsrcqyJmBO8ZiFNMuH3PyGJUwKLHropXWyCZzLsDF
gqfxJBjBgUVR3wZnP7HVaxT2Y-
IGcgpvTiZKhZzaD8WG54RF8DeSbIW0H5fHTfE_M86HIm4O9ypNPCmideZkq31wXSb4vFe
Duh9-
YXHWiKLvsjt5fUj9mNYybPje4RPozBBT9M64FCEnMAra2GLwGegyW6e8bn86Iwc9lAB7h
Ru594HMLaC8cL5UVG_BM76eK-
Qiw0Ec08kfhQzeftMkYcR40jDFwAnwtANcCEvTQ&lptoken=16f0989d8386942e07e2&target
=ts3859-sms-av-us&cpv=0.29&externalid=1698837607.225972-203110817-87173

1

2

3



4

5

6

7

8

9

10

11

12

13

14

15

16     77.    AVG is one of Gen Digital's brands.

17     78.    When Plaintiff clicked the "Protect Now" button, Plaintiff was directed to an

18 AVG webpage to buy one of Defendant's products:[14]

19

20

21

22

23

24

25

---

26 [14] https://www.avg.com/en-us/affiliate-homepage-close?utm_campaign=70771&programType=Impact&clickID=TCGyI00TpxyPWbPUtF1bfymM

UkFQpx35wQyVQQ0&TrafficSource=Affiliate&partnerID=70771&irclickid=TCGyI00TpxyP

27 WbPUtF1bfymMUkFQpx35wQyVQQ0&irgwc=1&utm_medium=affiliate&utm_source=impact

&utm_content=1617068

28



79.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from AVG.

80.    Upon information and belief, the URLs utilized by Gen Digital and its affiliates track the source of the traffic and the affiliate who sent the messages.

81.    On November 3, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    82.    When Plaintiff clicked the link, it directed his browser to a website[15] that

20  stated he visited "infected websites" and provided a button to click to scan his device:

21
22
23
24
25
26
27

---

[15] The website URL is as follows:
https://iso.panchorotno.com/landers/asdapdd/dyn/index.php?lang=en-US&clickid=228ebtlqexsbz9ee&domain=arimabusiness2.com&device=Unknown&device_model=Android%202.0&lpkey=160e99a9010a484f28&browser_name=Chrome%20Mobile&device_brand=Generic&os_name=Android&uclick=tlqexsbz&uclickhash=tlqexsbz-tlqexsbz-16c8-q5du-7vtl-qna2-qn5m-3c5cda#!#

28



83.     When Plaintiff clicked on the "Scan" button, he was directed to a Norton webpage[16] to buy one of Defendant's products:

---

[16] https://us.norton.com/products/mobile-security-for-android?irgwc=1&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFQLdW5wQyVQQ0&adid=912373&IRID=312695&source=ir&sharedid=11332_3408&sid=11332_3408

22





84.     The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from Norton.

85.     Upon information and belief, the URLs utilized by Gen Digital and its affiliates track the source of the traffic and the affiliate who sent the messages. Gen Digital maintains records containing identification information relating to the affiliates.

86.     On November 7, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



87.    When Plaintiff clicked the link, it directed his browser to a website[17] advertising a Norton product:

---

[17] The website URL is as follows:
https://berylliumreporters.xyz/ht/atv2/v4/?oid=2240&dom=urbstchoice.com&lpkey=163999cd3 95036e569&uclick=1mpmuoa5&uclickhash=1mpmuoa5-1mpmuoa5-168w8n-xsik8n-hea6bl-hea0zw-hea0uq-19736a#!/index

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17  88.   The message was deceptive in nature and purported to make claims about

18  Plaintiff's device needing repair from Norton.

19  89.   When Plaintiff clicked on the "Repair Now" button, he was directed to a

20  Norton webpage[18] to buy one of Defendant's products:

21

22

23

24

25  _____
[18] The website URL is as follows:
26  https://us.norton.com/store?irgwc=1&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFV24zgvww
    n1A0&adid=1248407&IRID=70771&source=ir&sharedid=11696_t2fe&sid=11696_t2fe&expid
27  =NLLTWO&promocode=NLLTWO

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



90.    The URLs utilized by Gen Digital and its affiliates track the source of the traffic and the affiliate who sent the messages.

91.    On November 30, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:

1

2

3

4

5

6

7

8

9

10



11    92.    When Plaintiff clicked the link, it directed his browser to a website[19]

12 advertising a Norton product:

13

14

15

16

17

18

19

20

21 [19] The website URL is as follows:

22 https://newstufftoday.com/av/norton/v1/?cep=cAMnY03vExudLq3Tpk-S07x-
ySTTc8wC5XU69KZ8YOAmK62F7mCQxkFz7dOE7OxukIbpMRWMB3YGALLQtFjPH_O-
I9E-t1EbZo8QVM-JkZ2aJeJqdBo4DlJFU-

23 ecg2_sTB13yr6nVheafRj4LMoiRrEUhz1AzROkN9IDmCbhp-
LHBdv5QZX0dW3FfVBwtBUPfAjZ7JgAx-_prFKchPjGXJlKaTTm6-

24 mrfLI8V2A4aWcnWTVY0_La6wK42l5VmM_JIootCrpBXlpAdq0F2N3dpG6igAqZMHtvHQb
Cu3jdRJ4slaA0V_BuIQpleLD_jNPa9VANYZ-

25 BgibMtyChXPmwLcibf3ZNy6TsinmiDTsOxCom_QwqQX5N-
Tk3usRHzW7fd1KfdzlhZ0XUJthAboJh2_qzTa0hvUoB1KeMWJjQA3VngeKTqOi_gLUARybf

26 MzlvzVax6mAcGzoP5y0ruODxcA&lptoken=175b011137bc85d853ed&target=ts3859-sms-av-
us&cpv=0.35&externalid=1701376752.022075-203110817-86965#!/hst

27

28

27



93.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing repair from Norton.

94.    When Plaintiff clicked on the "Repair Now" button, he was directed to a Norton webpage[20] to buy one of Defendant's products:

---

[20]  https://buy.norton.com/estore/checkOutV2/CartV3/true

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    95.    Because the URL at the Gen Digital website did not include a partner or

18  affiliate identification code, the text message would have been sent by Gen Digital itself or

19  at Gen Digital's express instruction, as it would not need to track the source of the message

20  to compensate a partner for the delivery of a customer to its website.

21    96.    Alternatively, the text message was sent by one of Gen Digital's unidentified

22  affiliate marketers and Gen Digital has other means to track and compensate the affiliate

23  marketer other than tracking a code in a link.

24    97.    On December 9, 2023, as shown below, Plaintiff received another

25  telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate

26  marketers:

27

28

98.    When Plaintiff clicked the link, it directed his browser to a website[21] advertising an AVG product:

---

[21] The website URL is as follows:
https://letcelebratenow.com/av/avg/v1/?cep=p10pr0YT1a_xFZZ50MQ2gq72cil_ISaXj4yFMgA-wUaprDo3tcnxL5QimrtLgiqDQrhFr6EFneK82f0ZU1JhaZkybfKXUfqGbwqsRFJNnh0YvJbI0ziYxzAN89uDEtEfq3te6mNcW_Yy_kn4a3vECICNIBBAEUQIy6eLFakbwXthFa65OtO9e7rIIzFBAzypCA8GXqKbOw9dnNLEnDVg4Ghema1koszZit_MEH53W8pLEQKLFjZMIzUJt4RGYOKIEfmCd1uOX5Pn2BibdCgWCb9VqxK_IUkSVIQWjJdr6xiFyDIT6hocgKzB5ErGTaDwJ8rWrF-e4t689UU7eomQAUy-yW3Tli4tnDXCnGZQRuNJjJJ8hQ7WUFUjzD9qFBGiySf34ciSiQjFdxZ1i7Lt72dqNhK87_BkkmaypBT1XH9VpqhyIF4A_artYdZdovnoqoCQ8B_8QJegfIKcsgjMj7w&lptoken=179d023a17af50404187&target=ts3859-sms-av-us&cpv=0.41&externalid=1702173241.154218-203110817-87173

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    99.    The message was deceptive in nature and purported to make claims about

20 Plaintiff's device being infected.

21    100.    When Plaintiff clicked on the "Proceed" button, he was directed to an AVG

22 webpage[22] to buy one of Defendant's products:

23
24
25

---

26 [22] https://www.avg.com/en-us/affiliate-homepage-
20?utm_content=1617068&utm_campaign=70771&utm_source=impact&clickID=TCGyI00Tpx
27 yPWbPUtF1bfymMUkFSIq1xwQyVQQ0&TrafficSource=Affiliate&partnerID=70771&progra
mType=Impact&irgwc=1&irclickid=TCGyI00TpxyPWbPUtF1bfymMUkFSIq1xwQyVQQ0&ut
28 m_medium=affiliate#android





101.    The message was deceptive in nature and purported to make claims about Plaintiff's device needing protection from AVG.

102.    The URLs utilized by Gen Digital and its affiliates track the source of the traffic and the affiliate who sent the messages.

103.    On December 13, 2023, as shown below, Plaintiff received another telemarketing text message from Gen Digital or one of Gen Digital's unidentified affiliate marketers:

1
2
3
4
5
6
7
8
9
10
11
12
13



14    104.    When Plaintiff clicked the link, it directed his browser to a website[23]

15 advertising a Norton product:

16
17
18
19
20
21
22
23
24



25    105.    The message was deceptive in nature and purported to make claims about

26 Plaintiff's device needing scanning from Norton.

27
   _____

28 [23] The website URL is as follows: https://www.lifethedec.autos/l/17ad02c8554299d265

1    106.    When Plaintiff clicked on the "Scan Now" button, he was directed to a

2    Norton webpage[24] to buy one of Defendant's products:



107.    Upon information and belief, the URLs utilized by Gen Digital and its

affiliates track the source of the traffic and the affiliate who sent the messages.

108.    Plaintiff did not provide prior express invitation or permission or consent for

the text messages he received.

109.    To the extent Gen Digital had *any* consent to call or text Plaintiff—which it

did not—Plaintiff revoked that consent by informing Gen Digital that he did not wish to

---

[24] https://us.norton.com/promo/affiliate/products-norton-360-deluxe-
nlltwo?irgwc=1&clickid=TCGyI00TpxyPWbPUtF1bfymMUkFS-
413IzLDTo0&adid=1494629&IRID=3094156&source=ir&sharedid=3100&sid=3100

receive these messages at least as early as October 18, 2023, when he complained about the illegal texting campaigns to Gen Digital and Gen Digital's litigation counsel.

110.    To the contrary, on information and belief, Plaintiff was targeted with subsequent unlawful text messages because Gen Digital had records and Gen Digital's affiliates and partners had records showing that Plaintiff had interacted with the text messages by clicking the deceptive links.

111.    Gen Digital's violations were willful and knowing, or its actions and omissions were, at a minimum, negligent.

112.    Plaintiff and Class members were damaged by Gen Digital's actions and omissions alleged herein. In addition to wasting their cellular data, storage, and battery life, Gen Digital committed an invasion of privacy, causing Plaintiff and Class members aggravation, annoyance, frustration, distraction, intrusion upon seclusion, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited calls and text messages.    Plaintiff's and Class members' privacy was unlawfully invaded, Gen Digital's text messages temporarily seized and trespassed upon the use of their phones, and Plaintiff and Class members were forced to divert attention away from other activities, including work, family, and personal activities, to address the unwanted text messages. Gen Digital's telephone calls were annoying and a nuisance and wasted the time of Plaintiff and Class members. *See, e.g.*, *Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to telemarketing calls).

## **GEN DIGITAL'S LIABILITY**

113.    Gen Digital and/or its third-party affiliates or partners acting on Gen Digital's behalf sent two or more telephone solicitations in a 12-month period to Plaintiff and Class members, whose numbers were on the National Do-Not-Call Registry at the time of the text messages and for 31 days prior to the text messages, in violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

114.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff and Class

members are entitled to $500 per call, pursuant to 47 U.S.C. § 227(c). Plaintiff and Class members are entitled to up to $1,500 per call if Gen Digital's actions are found to be knowing or willful.

115.    In addition, Gen Digital and/or its third-party affiliates or partners acting on Gen Digital's behalf made two or more telemarketing calls to Plaintiff and Class members despite not having in place the required policies and procedures prior to making such calls—as evidenced by Gen Digital's failure to stop texting Plaintiff when he requested not to receive additional messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

116.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff and Class members are entitled to an additional $500 per call, pursuant to 47 U.S.C. § 227(c). Plaintiff and Class members are entitled to up to $1,500 per call if Gen Digital's actions are found to be knowing or willful.

117.    Gen Digital, directly, individually, jointly, and/or in concert with its third-party affiliates, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited text messages that are the subject matter of this Complaint.

118.    For example, Gen Digital is directly liable for the text messages that Gen Digital sent itself.

119.    Upon information and belief Gen Digital sent certain of the text messages itself because the links included in certain of the text messages that drove traffic to Gen Digital's websites did not include any tracking information related to an affiliate.

120.    Even if Gen Digital outsourced its illegal texting campaigns to its third-party affiliates or partners, it is vicariously liable for calls that violate the TCPA.

121.    Gen Digital is liable for its third-party affiliates or partners' actions because it took steps to cause the texts to be sent, and because the texts were sent pursuant to Gen

Digital's actual authority, apparent authority and/or ratification.

122.    On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because [s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

123.    Moreover, the *FCC 2013 Ruling* rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires formal agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107. These rulings are entitled to deference under applicable principles of agency law given their reliance on and application of federal common law. *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019) (applying federal common law of agency in TCPA case as stated in Restatement (Third) of Agency).

124.    As Gen Digital's annual report makes clear, Gen Digital conducts advertising **itself** and through its third-party affiliates and partners:

> As of March 29, 2024, we have approximately 500 million total users, which come from direct, indirect and freemium channels. Of these total users, we have approximately 65 million paid cyber safety customers including over 39 million direct customers with whom we have a direct billing relationship.

- **Direct-to-consumer channel:** We use advertising to elevate our family of brands, attract new customers and generate significant demand for our services. Our direct subscriptions are primarily sold through our e-commerce platform and mobile apps, and we have a direct billing relationship with the majority of these customers.

- **Indirect partner distribution channels:** We use strategic and affiliate partner distribution channels to refer prospective customers to us and expand our reach to our partners' and affiliates' customer bases. We developed and implemented a global partner sales organization that targets new, as well as existing, partners to enhance our partner distribution channels. These channels include retailers, telecom service providers, hardware OEMs, employee benefit providers, strategic partners, and small offices, home offices and very small businesses. Physical retail and OEM partners represent a small portion of our distribution, which minimizes the impact of supply chain disruptions.[25]

125.    In addition, Gen Digital's litigation counsel represented directly to Plaintiff that Gen Digital's third-party affiliate marketers likely sent the messages at issue and that Gen Digital was aware that its affiliates were also sending unwanted text messages to other consumers.

126.    Gen Digital exercised actual authority over the affiliates and partners who directly texted Plaintiff. Gen Digital authorized its third-party affiliate marketers and/or partners to solicit customers on its behalf via direct solicitation, specifically through text messaging.

127.    Prior to any leads being sent, Gen Digital representatives and the affiliates engage in an application, due diligence, and review process, where information regarding business methods, guidelines, contact information, and financial information is shared and agreed upon. During this process, Gen Digital obtains knowledge regarding the business

---

[25] Gen Digital Inc., Form 10-K (Mar. 29, 2024), available at
https://www.sec.gov/ix?doc=/Archives/edgar/data/849399/000084939924000036/gen-20240329.htm

methods, background, and practices of affiliates.

128.   Gen Digital and its affiliates and partners developed a practice in which Gen Digital did not object to actions by its affiliates and partners that may have purported to exceed prior conferrals of authority, but rewarded them by compensating the affiliates and partners for the actions. On that basis the affiliates and partners reasonably believed that Gen Digital wished that the affiliates and partners send unsolicited and deceptive text messages to Plaintiff and Class members.

129.   Gen Digital provided its third-party affiliate marketers and/or partners with identification codes and required that its third-party affiliate marketers and/or partners use those identification codes in the links that they sent to consumers so that Gen Digital could track which third-party affiliate marketers or partners were responsible for driving consumers to its websites and so that Gen Digital could compensate the same for such actions in accordance with Gen Digital's agreements with such third-party affiliate marketers and/or partners.

130.   Gen Digital had the right to control the actions of its third-party affiliate marketers or partners, to audit, monitor, perform quality control, inspect, and investigate their marketing activities, and to take disciplinary or corrective actions at Gen Digital's discretion.

131.   In addition, upon information and belief, Gen Digital instructed its third-party affiliate marketers or partners where to direct the consumer traffic by providing identification of specific landing pages, and provision of APIs and web server resources.

132.   Gen Digital's business relationship with affiliate marketers and partners used a payment model based on the number of "clicks," whereby the more instances an affiliate can cause customers to navigate to Defendant's websites, the more money the affiliate could earn from Gen Digital. Effectively, this model, which Defendant established and maintained, incentivized its affiliate marketers and partners to send deceptive, misleading,

and unwanted text messages knowing the messages to be deceptive, misleading and unwanted.

133.    Thus, far from prohibiting the unlawful conduct, or even silently accepting the benefits thereof, Gen Digital conceived, designed, and maintained the model that fostered the unlawful conduct knowing that the unlawful conduct was the natural result of the compensation model it conceived, designed, and maintained.

134.    In addition, upon information and belief, Gen Digital could have directed its third-party affiliate marketers or partners to immediately cease and desist from sending Mr. Reisman text messages advertising its products when Mr. Reisman or prior consumers contacted Gen Digital complaining about the unlawful conduct.

135.    Because Mr. Reisman continued to receive unwanted text messages, Gen Digital took no such action to prevent the illegal marketing tactics of its third-party affiliates or partners, when it was aware of facts that would prompt a reasonably prudent person to inquire whether its affiliates and partners were violating the law and take necessary action to stop the action—or the very least, stop rewarding the actions and accepting its benefits.

136.    Gen Digital has also communicated to its investors and the public via its filings with the Securities Exchange Commission that it relies on third parties to market its products on its behalf via various channels directly to consumers.  For example, Gen Digital has admitted that it "use[s] strategic and affiliate partner distribution channels to refer prospective customers to us and expand our reach to our partners' and affiliates' customer bases."

137.    Gen Digital also failed to promptly remedy the illegal activity after it was brough it its attention by Mr. Reisman and the other persons who brought complaints prior to Mr. Reisman, as indicated by Gen Digital's email to Mr. Reisman.

138.    Gen Digital's counsel's representation to Mr. Reisman that Gen Digital forbids text message marketing is false. Indeed, Mr. Reisman continued to receive the same

or similar text messages despite his prompt complaint to Gen Digital that provided Gen Digital with more than sufficient information to identify the third-party marketing affiliate or partner and immediately take action.

139.    Accordingly, by failing to promptly remedy and prevent further illegal conduct after the disclosure of sufficient information to do so, Gen Digital continued to ratify the unlawful conduct of its affiliates and partners.

140.    Gen Digital was aware that its affiliates and partners used unsolicited text messaging marketing to solicit customers on its behalf. It turned a blind eye to the conduct and knowingly accepted the benefits of this unlawful conduct because it is highly profitable.

141.    Gen Digital provided the facilities, models, means, and incentives to its affiliates and partners to engage in unsolicited text messaging.

## CLASS ACTION ALLEGATIONS

142.    Plaintiff brings this action under Fed. R. Civ. P. 23(b)(3) on behalf of the proposed classes (collectively, the "Classes"), defined as follows:

> **National Do-Not-Call Class**:  Plaintiff and all persons within the United States (1) to whose telephone number Gen Digital sent (or had sent on its behalf) two or more text messages in a 12-month period (2) when the telephone number to which the text messages were sent was on the National Do-Not-Call Registry for 31 days or more at the time of the text messages, (3) where the text messages included a link to a website the same or substantially similar to those identified in the Complaint, (4) from four years prior to the filing of the Complaint through class certification.

> **Internal Do-Not-Call Class**:  Plaintiff and all persons within the United States (1) to whose telephone number Gen Digital sent (or had sent on its behalf) two or more text messages in a 12-month period, (2) including at least one after Defendant's or its vendors business records reflect that the person requested that text messages stop (3) where the text messages included a

link to a website the same or substantially similar to those identified in the Complaint, (4) from four years prior to the filing of the Complaint through class certification.

143.    Excluded from the Classes are Gen Digital and any entities in which Gen Digital has a controlling interest; Gen Digital's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and any claims for personal injury, wrongful death, and/or emotional distress.

144.    The Class members for whose benefit this action is brought are so numerous that joinder of all members is impracticable.  Upon information and belief, the Classes comprise thousands of individuals. This is based, in part, on the fact that Gen Digital has approximately 500 million total users, which come from direct, indirect and freemium channels.

145.    Gen Digital's records and records kept by its affiliates will reveal the precise number of Class members.

146.    The exact number and identities of the people within the Classes are ascertainable in that Gen Digital and/or third parties maintain written and electronically stored data showing:

      a.    The time period(s) during which Gen Digital or its agent(s) sent the text messages at issue;

      b.    The telephone numbers to which Gen Digital or its agent(s) sent the text messages at issue;

      c.    The telephone numbers for which Gen Digital had prior express written consent;

      d.    The telephone numbers that replied to Gen Digital's text messages with a message communicating a desire that Gen Digital stop sending text messages;

1          e.      The purposes of such text messages; and

2          f.      The names and addresses of Class members.

3      147.    There are common questions of law and fact affecting the rights of Class

4  members, including, *inter alia*, the following:

5          a.      Whether Gen Digital (or someone acting on its behalf) sends

6                  telemarketing text messages;

7          b.      Whether Gen Digital (or someone acting on its behalf) obtains prior

8                  express written consent to send text messages;

9          c.      Whether Gen Digital or the entities with which they contract send

10                 solicitation text messages to telephone numbers registered on the

11                 National Do-Not-Call Registry;

12         d.      Whether Gen Digital had the required policies and procedures prior to

13                 sending telemarketing text messages;

14         e.      Whether Gen Digital honors do-not-call requests;

15         f.      Whether Gen Digital's statutory violations were willful and knowing;

16                 and

17         g.      Whether Gen Digital should be enjoined from engaging in such

18                 conduct in the future.

19     148.    Plaintiff is a member of the Classes. Gen Digital sent two or more texts for

20  telemarketing purposes, in a one-year period to his telephone number, after Plaintiff asked

21  Gen Digital to stop and while his phone number was registered on the National Do-Not-

22  Call Registry.

23     149.    Plaintiff's claims are typical of the claims of Class members' in that they

24  arise from Gen Digital's uniform conduct and are based on the same legal theories as these

25  claims.

26

27

28

150.     Plaintiff and all Class members have also necessarily suffered concrete harm in addition to statutory damages, as they all spent time tending to Gen Digital's unwanted calls and suffered a nuisance and an invasion of their privacy.

151.     Plaintiff has no interests antagonistic to, or in conflict with, the Class members.

152.     Plaintiff is an adequate representative of the Classes and will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent him and the Classes. Plaintiff is prepared to participate in discovery and depositions and otherwise fulfill his obligations as a Class representative.

153.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

154.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each Class member make individual actions uneconomical.

155.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the National Do-Not-Call Class)**

156.     Plaintiff repeats and realleges the allegations in paragraphs 1-155 as if fully set forth herein.

157.     Gen Digital made, or had made on its behalf, telephone solicitations to Plaintiff and National Do-Not-Call Class members' telephone numbers.

158.     Plaintiff's and National Do-Not-Call Class members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

159.     Plaintiff and National Do-Not-Call Class members each received two or more such calls in a 12-month period when the telephone number to which the telephone

calls or texts were made was on the National Do-Not-Call Registry for 31 days or more at the time of the calls/texts.

160.    Plaintiff and National Do-Not-Call Class members are entitled to an award of $500 in statutory damages for each telephone solicitation call, pursuant to 47 U.S.C. § 227(c)(5).

161.    Plaintiff and National Do-Not-Call Class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Plaintiff and the Internal Do-Not-Call Class)

162.    Plaintiff repeats and realleges the allegations in paragraphs 1-155 as if fully set forth herein.

163.    Gen Digital sent numerous text messages for telemarketing purposes to Plaintiff's and Internal Do-Not-Call Class members' telephone numbers.

164.    Gen Digital did so because it did not have a written policy pertaining to "do not call" or stop requests.

165.    Gen Digital did not train its personnel on the existence or use of any internal "do not call" list or policy.

166.    Gen Digital did not record or honor "do not call" or stop requests.

167.    Gen Digital sent two or more telemarketing text messages to Plaintiff and Internal Do-Not-Call Class members' telephone numbers in a 12-month period.

168.    Plaintiff and Internal Do-Not-Call Class members are entitled to an award of $500 in statutory damages per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

169.    Plaintiff and Internal Do-Not-Call Class members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the Class Representative and his counsel as Class Counsel;

B.    An order declaring that Gen Digital's actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Gen Digital from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages;

F.    An award of reasonable attorneys' fees and costs; and

G.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** June 27, 2025

Plaintiff ELI REISMAN, *individually, and on behalf of himself and all others similarly situated,*

By: */s/ Max S. Morgan*
Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr.

*tom@attorneyzim.com*
Zimmerman Law Offices, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
(*pro hac vice* application forthcoming)

Counsel for Plaintiff and the Class