Buzzi L. Shindler (SBN: 020001)
**BUCHALTER,**
 **A PROFESSIONAL CORPORATION**
15279 North Scottsdale Road, Suite 400
Scottsdale, AZ 85254-2659
Telephone: 480.383.1800
Fax: 480.824.9400
Email: bshindler@buchalter.com

Artin Betpera (admitted *pro hac vice*)
**BUCHALTER,**
 **A PROFESSIONAL CORPORATION**
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant Gen Digital Inc.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELI REISMAN,<br><br>         Plaintiff,<br><br>    v.<br><br>GEN DIGITAL INC.,<br><br>         Defendant. | No. 2:25-cv-01653-PHX-SPL<br><br>**DEFENDANT GEN DIGITAL INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[FED. R. CIV. P. 12(b)(6)] |

   Defendant Gen Digital Inc. ("Gen"), pursuant to Fed. R. Civ. P. 12(b)(6), hereby submits its Motion to Dismiss Plaintiff's First Amended Complaint. This Motion is supported by the following Memorandum of Points and Authorities, the concurrently filed Certificate of Conferral, and the entire record before the Court.

/ / /

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 6

II. SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS ............................ 7

III. LEGAL STANDARD ..................................................................................... 9

IV. PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD THAT GEN IS EITHER DIRECTLY OR VICARIOUSLY LIABLE FOR THE ALLEGED TEXT MESSAGES ........................................................................................ 9

    A. Plaintiff Has Failed to Plausibly Plead That Gen Is Directly Liable for the Alleged Text Messages .......................................................................... 10

    B. Plaintiff's Raft Of Conclusory Allegations Do Not Suffice to Plausibly Plead That Gen Is Vicariously Liable For the Text Messages ................... 12

        1. Plaintiff Cannot Plausibly Plead That Gen Expressly Authorized or Controlled the Manner and Means of the Text Messages ........... 12

        2. Plaintiff Has Failed to Plausibly Plead Apparent Authority Based on Any Alleged Manifestations by Gen ......................................... 16

        3. Plaintiff Has Failed to Plausibly Plead Ratification ....................... 17

V. CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
   No. 17-CV-03315-PJH, 2018 WL 288055 (N.D. Cal. Jan. 4, 2018) .................... 16, 18

*Armstrong v. Investor's Bus. Daily, Inc.*,
   No. CV 18-2134-MWF, 2020 WL 2041935 (C.D. Cal. Mar. 6, 2020) ...................... 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 9

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...................................................................................... 17

*Brown v. Nano Hearing Tech Opco, LLC*,
   No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536 (S.D. Cal. July 9,
   2024) ...................................................................................................................... 10, 11

*Canary v. Youngevity Int'l, Inc.*,
   No. 5:18-CV-03261-EJD, 2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ...... 13, 17, 18

*Freidman v. Massage Envy Franchising*,
   LCC, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June
   13, 2013) ....................................................................................................................... 10

*Gomez v. Campbell-Ewald Co.*,
   768 F.3d 871 (9th Cir. 2014) ........................................................................................ 12

*Griffin v. Am.-Amicable Life Ins. Co. of Texas*,
   No. 6:24-CV-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024) ........................ 11

*Henderson v. United Student Aid Funds, Inc.*,
   918 F.3d 1068 (9th Cir. 2019) ...................................................................................... 18

*Jance v. Homerun Offer LLC*,
   No. CV-20-00482-TUC-JGZ, 2021 WL 3270318 (D. Ariz. July 30,
   2021) ............................................................................................................................. 13

*Jones v. Royal Admin. Servs.*,
    887 F.3d 443 (9th Cir. 2018) ................................................................. 12, 13, 14

*Jorge Valdes v. Nationwide Real Est. Executives, Inc.*,
    No. SACV2001734DOCJDEX, 2021 WL 2134159 (C.D. Cal. Apr. 22,
    2021) ............................................................................................................... 20

*Kristensen v. Credit Payment Servs.*,
    879 F.3d 1010 ................................................................................................. 17

*Linlor v. Five9, Inc.*,
    No. 17CV218-MMA (BLM), 2017 WL 2972447 (S.D. Cal. July 12,
    2017) ............................................................................................................... 13

*Naiman v. TranzVia LLC*,
    No. 17-CV-4813-PJH, 2017 WL 5992123 (N.D. Cal. Dec. 4, 2017) .......... 15

*NLRB v. Dist. Council of Iron Workers*,
    124 F.3d 1094 (9th Cir. 1997) ....................................................................... 17

*Paul Sapan v. Bloom Ret. Holdings, Inc.*,
    No. 8:24-CV-01213-FWS-KES, 2025 WL 1718083 (C.D. Cal. Apr. 14,
    2025) ............................................................................................................... 11

*Rogers v. Postmates Inc.*,
    No. 19-cv-05619-TSH, 2020 WL 3869191 (N.D. Cal. Jul. 9, 2020) ..... 15, 16

*Sapan v. Shore Cap. Corp.*,
    No. 8:23-CV-01974-FWS-JDE, 2024 WL 4002622 (C.D. Cal. Aug. 23,
    2024) ............................................................................................................... 19

*Stark v. Stall*,
    No. 19-CV-00366-AJB-AHG, 2020 WL 13158003 (S.D. Cal. Aug. 20,
    2020) ............................................................................................................... 11

*Thomas v. Taco Bell Corp.*,
    582 Fed. Appx. 678 (9th Cir. 2014) ........................................................ 12, 17

*Thomas v. Taco Bell Corp.*,
    879 F. Supp. 2d 1079 (C.D. Cal. 2012), aff'd, 582 F. Appx. 678 (9th Cir.
    2014) ......................................................................................................... 12, 13

*Usanovic v. Americana, L.L.C.*,
   No. 2:23-CV-01289-RFB-EJY, 2025 WL 961657 (D. Nev. Mar. 31,
   2025) .................................................................................................................... 14

*Whittaker v. Freeway Ins. Servs. Am., LLC*,
   No. CV-22-8042-PCT-DGC, 2023 WL 167040 (D. Ariz. Jan. 12, 2023) .................. 10

*Winters v. Grand Caribbean Cruises Inc.*,
   No. CV-20-00168-PHX-DWL, 2021 WL 3709854 (D. Ariz. Aug. 20,
   2021) ........................................................................................................ 12, 15, 16

*Winters v. Quicken Loans Inc.*,
   No. CV-20-00112-PHX-MTL, 2021 WL 5040323 (D. Ariz. Oct. 29,
   2021) (*Winters*).................................................................................................. 13, 16

**Statutes**

47 U.S.C.
   § 227(c) ............................................................................................................. 8, 9, 10

**Rules**

Fed. R. Civ. Proc.
   12(b)(6) ..................................................................................................................... 9

**Other Authorities**

47 C.F.R.
   § 64.1200(c)(2).......................................................................................................... 9
   § 64.1200(c)-(d)................................................................................................... 9, 10
   § 64.1200(d) ............................................................................................................ 10
   § 64.1200(f)(15) ........................................................................................................ 9
   § 64.1200(f)(15)(i)-(ii) .............................................................................................. 9

Restatement (Third) of Agency
   § 1.01, cmt. (2006) .................................................................................................. 13
   § 4.01, cmt............................................................................................................... 18
   § 7.08 (2006) ........................................................................................................... 16

I. **INTRODUCTION**

Plaintiff attempts to maintain a nationwide putative class action against Gen for violations of the Telephone Consumer Protection Act based principally upon his theory that Gen is vicariously liable for unsolicited text messages Plaintiff allegedly received from Gen's third-party marketing vendors. Plaintiff's theory of vicarious liability rests on highly conclusory allegations, none of which are sufficient to plausibly plead an agency relationship between Gen and any third-party vendor that allegedly sent the text messages.

When stripped of its conclusory allegations, the First Amended Complaint boils down to the following allegations:

- Plaintiff received nine (9) text messages between October and December 2024, none of which mentioned Gen, or any of Gen's products;
- Each text message came from a random phone number, which Plaintiff does not allege is affiliated with Gen;
- With the exception of the first text message, each message contained a hyperlink to a random website, which Plaintiff does not allege is operated by Gen, and which purportedly contained an advertisement for a Gen antivirus product;
- After Plaintiff brought the first text message to Gen's attention, Gen's in-house attorney told Plaintiff that the text message may have been sent by "a third-party marketing affiliate which itself had access to your phone number," but that: (1) "**Gen does not send text-message solicitations and strictly forbids this practice among its marketing vendors**"; and (2) "[w]hile this is not common, it has happened before, and **our practice is to work internally to identify the sender and have them removed from our marketing-affiliate platform**."

If these facts support any plausible inference, it is that the messages at issue were sent by third-party marketing affiliates, without Gen's authorization, and in violation of Gen's strict prohibition on text message marketing. For purposes of vicarious liability, these facts are insufficient to plausibly plead the existence of an agency relationship between Gen and the third-party senders of the alleged text messages, whether under a theory of actual authority, apparent authority, or ratification. Accordingly, and as discussed below, the Court should grant Gen's motion.

## II. SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that between October 16, 2023 and December 13, 2023, he received nine (9) text messages "from Gen or one of Gen Digital's unidentified affiliate marketers." First Amended Complaint, Doc. 35 ("FAC"), ¶¶ 40-106. Each message was sent from a seemingly random telephone number. *Id*. None of the alleged text messages referenced Gen, or any of Gen's brands or products. *Id*.

Plaintiff alleges he received the first of the nine text messages on October 16, 2023. FAC, ¶ 42. That text message did not mention Gen. *Id*. Plaintiff does not allege that the text message was sent using a phone number associated with Gen. *Id*. Plaintiff alleges that the text message contained a hyperlink (dmyhnwcom/DshGva) which, when clicked, directed Plaintiff to "Avast.com, a website operated by Gen Digital." FAC, ¶¶ 42-44. According to the FAC, the full URL associated with the hyperlink contained a numerical identifier (Afiliate&partnerID=2462623) which Gen allegedly used "to determine and track where customers came from so that Gen Digital can credit its partner affiliates with a money payment for driving potential customers to its website." FAC, ¶¶ 46-47.

Plaintiff alleges that, after receiving the first message, he contacted Gen "to bring the matter to Gen Digital's attention, and [to] advise[] that the message was unwanted, upsetting, and deceptive." FAC, ¶ 52. Plaintiff received the following response from Gen's in-house counsel:

> Good morning, Eli –
> My colleague . . . forwarded me your inquiry regarding an unsolicited text message you received. We are sorry and are looking into this – I understand from personal experience how these unwanted texts can be frustrating. In all likelihood, the text was sent by a third-party marketing affiliate which itself had access to your phone number. (**Gen does not send text-message solicitations and strictly forbids this practice among its marketing vendors**.)
> While this is not common, it has happened before, and our practice is to work internally to identify the sender and have them removed from our marketing-affiliate platform.

> I understand you have already had your subscription cancelled and refunded. If you like, I'd be happy to look into offering you a free year of services as a customer-service gesture for this inconvenience.
> We appreciate your outreach and look forward to assisting you on this matter.

FAC, ¶ 54.

Plaintiff claims that starting on October 25, 2023, he received eight (8) more text messages. FAC, ¶¶ 62-106. Like the first message, none of these subsequent messages referenced Gen. Unlike the first message, these text messages were sent from different phone numbers. *Id*. The links contained in each message did not direct Plaintiff to a website operated by Gen. *Id*. Instead, the hyperlinks allegedly directed Plaintiff to a random assortment of websites, such as http://specialgivaways.com, http://iso.panchorotno.com, and http://berylliumreporters.xyz, which allegedly contained an advertisement for antivirus products offered by Gen. *Id*.

Based on these allegations, Plaintiff asserts two causes of action against Gen for violations of 47 U.S.C. § 227(c). FAC, ¶¶ 156-159. Plaintiff also seeks to certify two putative classes, defined as follows:

> **National Do-Not-Call Class**: Plaintiff and all persons within the United States (1) to whose telephone number Gen Digital sent (or had sent on its behalf) two or more text messages in a 12-month period (2) when the telephone number to which the text messages were sent was on the National Do-Not-Call Registry for 31 days or more at the time of the text messages, (3) where the text messages included a link to a website the same or substantially similar to those identified in the Complaint, (4) from four years prior to the filing of the Complaint through class certification.
>
> **Internal Do-Not-Call Class**: Plaintiff and all persons within the United States (1) to whose telephone number Gen Digital sent (or had sent on its behalf) two or more text messages in a 12-month period, (2) including at least one after Defendant's or its vendors business records reflect that the person requested that text messages stop (3) where the text messages included a link to a website the same or substantially similar to those identified in the Complaint, (4) from four years prior to the filing of the Complaint through class certification.

FAC, ¶ 142.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Further, "courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ….only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Id.* at 678–79.

### IV. PLAINTIFF HAS FAILED TO PLAUSIBLY PLEAD THAT GEN IS EITHER DIRECTLY OR VICARIOUSLY LIABLE FOR THE ALLEGED TEXT MESSAGES

The TCPA regulates certain types of telephone calls or text messages sent to residential telephone numbers registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)-(d). The TCPA prohibits making a "telephone solicitation" to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15). The term excludes any calls or messages to any person "with that person's prior express invitation or permission," or "with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15)(i)-(ii).

The TCPA also requires any person or entity that makes "call[s] for telemarketing purposes to a residential telephone subscriber" to "institute[] procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). These procedures include maintaining an internal do-not-call list, and honoring do-not-call requests. *Id*.

The TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c). Plaintiff alleges in his first and second causes of action that Gen violated the these provisions of the TCPA. See Complaint, ¶¶ 120-133. An essential element of both causes of action is that Gen made a "telephone solicitation" or engaged in "telemarketing" in the first instance. 47 C.F.R. § 64.1200(c), (d).

### A.   Plaintiff Has Failed to Plausibly Plead That Gen Is Directly Liable for the Alleged Text Messages

"To establish direct liability, the complaint must allege facts showing the defendant actually placed the calls violating the TCPA." *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040, at *4 (D. Ariz. Jan. 12, 2023); see also *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) ("Direct liability under the TCPA applies only to persons or entities that directly make or initiate calls, which requires taking the steps necessary to physically place the call.") (cleaned up).

Plaintiff alleges that some of the messages he received "must have been sent," by Gen because they "did not include a partner or affiliate identification code." FAC, ¶¶ 67, 119. This conclusory allegation makes little sense and, at best, amounts to pure speculation. See *Freidman v. Massage Envy Franchising*, LCC, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (TCPA complaint dismissed

where Plaintiff's allegations "do nothing more than assert a speculation.")

Aside from its confusing nature, Plaintiff's sole allegation concerning direct liability fails to overcome the absence of allegations that might plausibly or logically establish that Gen directly sent any of the text messages, such as: (1) the text messages mentioned Gen, or one of Gen's brands; (2) the text messages were sent from a phone number associated with Gen; or (3) the text messages contained a hyperlink to a website owned or operated by Gen. See e.g. *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at *3 (D. Or. Sept. 27, 2024) (direct liability plausibly alleged where caller identified himself as being affiliated with the defendant, and tried to sell defendant's products); *Paul Sapan v. Bloom Ret. Holdings, Inc.*, No. 8:24-CV-01213-FWS-KES, 2025 WL 1718083, at *3 (C.D. Cal. Apr. 14, 2025) (plaintiff plausibly alleged direct liability where calls made from phone numbers associated with defendant). To the extent the FAC contains any non-speculative factual allegations, those allegations expressly contradict Plaintiff's conclusory claim that Gen directly sent any of the text message. As alleged in the FAC, Gen's in-house attorney unequivocally stated Gen "does not send text-message solicitations," and "[i]n all likelihood, the text was sent by a third-party marketing affiliate which itself had access to [Plaintiff's] phone number." FAC, ¶ 54.

For these reasons, Plaintiff's speculative and conclusory allegations are insufficient to plausibly plead that Gen directly sent the texts. See e.g. *Brown*, 2024 WL 336736 at *3; *Stark v. Stall*, No. 19-CV-00366-AJB-AHG, 2020 WL 13158003, at *3 (S.D. Cal. Aug. 20, 2020) ("Besides pure conclusory allegations the Court need not entertain, there are no facts demonstrating [the defendant's] direct involvement in violating the TCPA.")

### B. Plaintiff's Raft Of Conclusory Allegations Do Not Suffice to Plausibly Plead That Gen Is Vicariously Liable For the Text Messages

The Ninth Circuit has held that "vicarious liability can provide the basis for liability for a TCPA violation." *Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014). "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014). Courts examine vicarious liability for TCPA violations under three "bedrock" theories of agency: actual authority, apparent authority, and ratification. *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 449 (9th Cir. 2018). Courts will "routinely" resolve the existence of an agency relationship "at the motion-to-dismiss stage." *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 3709854, at *7 (D. Ariz. Aug. 20, 2021).

#### 1. Plaintiff Cannot Plausibly Plead That Gen Expressly Authorized or Controlled the Manner and Means of the Text Messages

To establish vicarious liability under an actual authority theory, Plaintiff must establish both "an agency relationship" and "actual authority to place the unlawful calls." *Jones*, 887 F.3d at 449. *Id.* "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Id.* at 448 (citing *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017)). Importantly, "agency means more than passive permission; it involves request, instruction, or command." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), aff'd, 582 F. Appx. 678 (9th Cir. 2014) (cleaned up). Thus, "[f]or an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a

right to control the actions of the agent." *Jones*, 887 F.3d at 448. (internal quotation marks and brackets omitted). The Ninth Circuit has emphasized that "[i]n determining whether vicarious liability may be imposed, the extent of control exercised by the principal is the essential ingredient." *Id*. at 450 (citing to *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)) (internal quotation marks omitted), *accord* Restatement (Third) of Agency, § 1.01, cmt. f (2006) ("A relationship of agency is not present unless the person on whose behalf action is taken has the right to control the actor.")

In the context of the TCPA, courts within the Ninth Circuit have repeatedly held that to establish a formal agency relationship, the plaintiff must show the alleged principal "controlled ... the manner and means" of the calls or text messages at issue. See *Thomas*, 879 F. Supp. 2d at 1084; *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 WL 3270318, at *5 (D. Ariz. July 30, 2021) ("To establish vicarious liability for TCPA violations by All Star Investments, Plaintiff must make a prima facie showing that All Star Investments had the right to substantially control Homerun Offer, and Homerun Offer acted as an agent of the entity."); *Winters v. Quicken Loans Inc.*, No. CV-20-00112-PHX-MTL, 2021 WL 5040323, at *3 (D. Ariz. Oct. 29, 2021) (*Winters*) ("A key principle of any agency relationship is control, especially when determining if vicarious liability exists."); *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *6 (N.D. Cal. Mar. 20, 2019) ("To establish vicarious liability for a TCPA violation, a plaintiff must allege facts to show that the defendant controlled the 'manner and means' of the call."); *Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017) ("In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant "controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted.") (brackets in original).

Actual authority, in turn, "is limited to actions specifically mentioned to be done in a written or oral communication or consistent with a principal's general statement of what the agent is supposed to do." *Jones*, 887 F.3d at 449 (quotation marks omitted). In the context of the TCPA, this means a principal may only be liable for an agent's TCPA violations under a theory of actual authority where the principal has specifically authorized the agent to make calls or send text messages "in violation of the TCPA." *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2020 WL 2041935, at *7 (C.D. Cal. Mar. 6, 2020); see also *Usanovic v. Americana, L.L.C.*, No. 2:23-CV-01289-RFB-EJY, 2025 WL 961657, at *4 (D. Nev. Mar. 31, 2025) (plaintiff failed to plausibly plead actual authority in the absence of factual allegations that defendant provided agents with "authorization or directive . . . . instructing them to make calls to numbers" on the national do not call registry).

Plaintiff alleges in conclusory fashion that "Gen Digital exercised actual authority over the affiliates and partners who directly texted Plaintiff. Gen Digital authorized its third-party affiliate marketer and/or partners to solicit customers on its behalf via direct solicitation, specifically through text messaging." FAC, ¶ 126. Plaintiff attempts to support his theory of "actual authority" through a string of other, highly conclusory allegations. Examples of such conclusory allegations include: (1) Gen "obtains knowledge regarding the business methods, backgrounds and practices of affiliates;" (2) Gen "developed a practice" to "not object to actions by its affiliates;" (3) Gen provided third parties with "identification codes" to track their performance; and (4) Gen "had the right to control the actions of its third-party affiliate marketers." FAC, ¶¶ 126-130.

As a starting point, courts have routinely found similar conclusory allegations are insufficient to plausibly plead vicarious liability based on actual authority. These sorts of "conclusions" unsupported by "any facts showing how [Gen] did those things," do not "allow the court to draw the reasonable inference that [Gen] is vicariously liable," for the

third party text messages. *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *11 (N.D. Cal. Dec. 4, 2017). As observed in *Winters*, courts "have not hesitated to dismiss TCPA claims," premised on such conclusory allegations. *Winters*, 2021 WL 3709854, at *6, n.2 (collecting cases).

"[E]ven if [Plaintiff] had alleged that [Gen] exercised some degree of control over [the third parties], to state a plausible claim based on actual authority, a plaintiff must also allege facts showing that the defendant had the right to control the manner and means of the calls." *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 3869191, at *4 (N.D. Cal. Mar. 3, 2020) (*Rogers*). To meet this standard, Plaintiff must allege facts which demonstrate Gen was involved in the third party's "preparation and transmission of the text[.]" *Id*. The FAC contains no such allegations.

Additionally, Plaintiff's allegation that Gen supplied "identification codes" to monitor the performance of the third-party marketers does not suffice to plausibly plead that Gen controlled the manner or means of the text messages sent by those third parties. See FAC, ¶ 129. For example, the plaintiff in *Rogers* had similarly alleged that Postmates was vicariously liable for text messages sent by a third-party marketing agency under a theory of actual authority. *Rogers*, 2020 WL 3869191, at *3-4. Like Plaintiff here, the plaintiff in *Rogers* attempted to support his theory through allegations that Postmates "monitored" or "tracked" the performance of the third party's text message campaigns. *Id*. at *4. The court found that such allegations did not establish that Postmates controlled or directed the campaigns, explaining:

> Rogers' allegation that Postmates "oversaw," "monitored," and "tracked" the "results" of the marketing campaign does not amount to an allegation that it "controlled" Bird Dog in executing that campaign. Postmates and Bird Dog were in a commercial relationship; the former was paying the latter for its marketing services. It is only natural that Postmates would want to keep an eye on the marketing campaign results to know whether it was paying off; that doesn't mean it was directing things.

*Id*.

Lastly, the mere fact that Gen may have relationships with third-party marketing vendors does not, in and of itself, suffice to plausibly plead Gen controlled the manner or means of any text messages sent by that third party. See *Winters v. Quicken Loans*, 2021 WL 5040323, at *4 ("The existence of a contractual relationship between the Telemarketing Agent and Quicken Loans does not, in and of itself, mean that there is an agency relationship between the two parties."); *Winters v. Grand Caribbean Cruises*, 2021 WL 3709854, at *5 (same); *Rogers v. Postmates Inc.*, No. 19-cv-05619-TSH, 2020 WL 3869191, at *4 (N.D. Cal. Jul. 9, 2020) ("[A]n allegation of a beneficial contractual relationship alone is insufficient to establish agency.") (cleaned up); *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018) ("[T]he court can infer that there is some relationship between the purported representatives and defendant. But that inference is not enough because it still does not allow the court to infer that defendant exercises control over the representatives.")

When stripped of its conclusions, Plaintiff's FAC does not contain any factual allegations which would allow the Court to reasonable infer that Gen controlled the manner and means of the text messages allegedly sent to Plaintiff by third parties. Accordingly, Plaintiff has failed to plausibly plead that Gen is vicariously liable for these third-party messages under a theory of actual authority.

### 2. Plaintiff Has Failed to Plausibly Plead Apparent Authority Based on Any Alleged Manifestations by Gen

"[A]pparent-authority doctrine is operative in explaining a principal's vicarious liability when a third party's reasonable belief in an agent's authority to speak or deal on behalf of a principal stems from a manifestation made by the principal and it is through statements or dealings that the agent acts tortiously." Restatement (Third) of Agency § 7.08 (2006). "Apparent authority arises from the principal's manifestations to a third

party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094, 1099 (9th Cir. 1997) (internal citation omitted). Importantly, "apparent authority cannot be established merely by showing that [the agent] claimed authority or purported to exercise it, but must be established by proof of something said or done by the [principal] on which [the plaintiff] reasonably relied." *Id; see also, Thomas*, 582 F. App'x at 679 (same).

Plaintiff does not point to any statements or acts by Gen which provided Plaintiff with a reasonable basis to believe any third party was authorized to send Plaintiff text messages on Gen's behalf. To the extent Gen made any statement directly to Plaintiff, it was that Gen strictly forbids its marketing vendors from engaging in text-message solicitations, and penalizes any that violate this policy. FAC, ¶ 54. This is the opposite of a statement or action which would provide any person with a reasonable belief "that the principal has authorized the agent to do the act in question." *NRLB*, 124 F.3d at 1099. Accordingly, Plaintiff has failed to plausibly plead apparent authority.

### 3. Plaintiff Has Failed to Plausibly Plead Ratification

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1014 (quoting from Restatement (Third) of Agency § 4.01(1)). An act may be ratified "if the actor acted or purported to act as an agent on the person's behalf." *Id*. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003). Therefore, "when an actor is not an agent and does not purport to be one,' the doctrine of ratification does not apply." *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (cleaned up). There are two ways a

principal can ratify the actions of an agent: through a "knowing acceptance of the benefit," of the agent's actions, or through "willful ignorance." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073-74 (9th Cir. 2019); see also Restatement (Third) of Agency § 4.01, cmt. g (2006) ("A person may ratify an act … by receiving or retaining benefits it generates if the person has knowledge of material facts.")

Plaintiff has failed to plausibly plead Gen is vicariously liable for any third-party text messages under a theory of ratification. To start, for the reasons discussed above, Plaintiff fails to plausibly plead an agency relationship between Gen and any third-party vendor in the first instance. This is "fatal to [Plaintiff's] ratification theory." *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019); see also *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *6 (N.D. Cal. Jan. 4, 2018) ("Plaintiff cannot show defendant is liable under a ratification theory because the principal-agent relationship is still a requisite, and ratification can have no meaning without it.")

Plaintiff contends Gen ratified the alleged TCPA violations of third-party marketing agencies because Plaintiff continued to receive text messages after bringing the first message he received to Gen's attention. FAC, ¶¶ 134-35. But Plaintiff does not plead that these subsequent messages were sent by the *same* third party responsible for the first message. Without such an allegation, Plaintiff cannot claim Gen knew, or had reason to know Plaintiff continued to receive messages from the same third party— which is essential to his theory of ratification.

Importantly, the factual allegations concerning the eight messages subsequently received by Plaintiff reflect they were sent by a *different* third party than the one responsible for sending Plaintiff the first message. The messages came from different numbers. FAC, ¶¶ 62-106. And unlike the first message, the subsequent eight messages contained no hyperlinks to any website owned or operated by Gen. *Id*.

Moreover, Plaintiff theorizes that Gen assigns third parties unique identification numbers, contained within the hyperlinks used to allegedly direct traffic to Gen's website. FAC, ¶ 46. In the case of the first text message, which Plaintiff alleges he brought to Gen's attention, that identification number was "Affiliate&partnerID=2462623". According to Plaintiff's own theory, if the subsequent eight messages were sent by the same agent, then they would have contained the same identification number embedded in the hyperlink. But they did not. See FAC, ¶¶ 62-106. They either contained a different identification number or no identification number at all. *Id*. If anything, the material differences between the first, and subsequent eight messages demonstrate that Gen—consistent with the statement made by its counsel—removed the third-party responsible for the first message from its marketing-affiliate platform. And Plaintiff does not allege he either brought any of the subsequent eight messages to Gen's attention, or that Gen otherwise knew other, different third parties were sending Plaintiff unauthorized text messages.

Even if Plaintiff had plausibly pled that the subsequent eight messages he received were sent by the same third-party, his ratification theory still fails because he does not allege Gen obtained and accepted a benefit from the text messages allegedly sent to Plaintiff by third-party vendors. To the contrary, the factual allegations of the complaint establish that Plaintiff purchased a subscription from Gen (presumably after receiving the first message), but Gen immediately refunded Plaintiff's purchase price, and cancelled his subscription after Plaintiff complained of the first text message. See FAC, ¶ 54 ("I understand you have already had your subscription cancelled and refunded.") This constitutes an act of repudiation, not ratification.

Absent non-conclusory allegations that Gen benefitted from the text messages sent to Plaintiff, Plaintiff cannot plausibly ratification. See e.g. *Sapan v. Shore Cap. Corp.*, No. 8:23-CV-01974-FWS-JDE, 2024 WL 4002622, at *6 (C.D. Cal. Aug. 23,

2024) ("Plaintiff fails to support these conclusory statements with factual support, including facts showing that Shore Capital Corporation knowingly accepted the benefit of these telemarketing calls through 'an objectively or externally observable action.'") (cleaned up); *Jorge Valdes v. Nationwide Real Est. Executives, Inc.*, No. SACV2001734DOCJDEX, 2021 WL 2134159, at *5 (C.D. Cal. Apr. 22, 2021) ("Plaintiff has not alleged any benefit that [defendant] may receive from such actions.")

## V.  CONCLUSION

For these reasons, Gen respectfully requests that the Court grant its motion and dismiss Plaintiff's complaint.

DATED: July 11, 2025

**BUCHALTER, A PROFESSIONAL CORPORATION**

By: /s/ Artin Betpera
Buzzi L. Shindler
Artin Betpera
Attorneys for Defendant Gen Digital Inc.