Max S. Morgan, Esquire (admitted *pro hac vice*)
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr. (admitted *pro hac vice*)
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*tom@attorneyzim.com*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Eli Reisman, *individually, and on behalf of others similarly situated*,

*Plaintiff*,

v.

Gen Digital, Inc.,

*Defendant*.

No. 2:25-cv-01653-PHX-SPL

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 1
III. LEGAL STANDARD .......... 3
IV. ARGUMENT .......... 4
1. The FAC Pleads Defendant Is Directly Liable for One or More of the Unwanted Text Messages .......... 4
2. The FAC Pleads Defendant Is Vicariously Liable for One or More of the Unwanted Text Messages .......... 6
a. The FAC Alleges Actual Authority .......... 6
b. The FAC Alleges Ratification .......... 11
V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

***Cases***

*Arizona v. Michael D. Lansky L.L.C.*, No. CV-23-00233-TUC-CKJ, 2024 WL 3657129 (D. Ariz. May 8, 2024) ..................... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................................ 3

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) .................................................................... 3, 4

*Brown v. DirecTV, LLC* 562 F. Supp. 3d 590 (C.D. Cal. 2021) ........................................................ 7, 8, 9

*Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777(S.D. Cal. Jan. 19, 2024)...................... 3

*Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024) ............................. 5

*Henderson v United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) ........................................................ 6, 11, 12

*Husayn v. Mitchell*, No. 24-1468, 2025 WL 1789956 (9th Cir. June 30, 2025)....................................... 8, 11

*Jones v. Royal Administration Services Inc.* 887 F.3d 443 (9th Cir. 2018) ........................................................................ 6, 7, 8

*Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) .............................................................................. 6

*Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-RGC, 2023 WL 167040 (D. Ariz. Jan. 12, 2023).................... 4, 6

*Williams v. PillPack LLC*, 644 F. Supp. 3d 845 (W.D. Wash. 2022) ................................................... 7, 8

*Workman v. CarGuard Admin. Inc.*, No. CV-23-00961-PHX-DLR, 2024 WL 249160 (D. Ariz. Jan. 23, 2024) ................. 5, 8

***Statutes, Rules, and Regulations***

47 U.S.C. § 227 .......... 1, 6

47 C.F.R. § 64.1200.......... 1

Fed. R. Civ. P. 8.......... 4, 6

Fed. R. Civ. P. 12.......... 3

***Miscellaneous Authorities***

Restatement (Third) of Agency § 1.01 (2006) .......... 8

Restatement (Third) of Agency § 1.03 (2006) .......... 8

## I. INTRODUCTION

Plaintiff Eli Reisman's ("Plaintiff") First Amended Class Action Complaint ("FAC") arises out of the illegal marketing practices of Defendant Gen Digital, Inc. ("Defendant"). Defendant sent, or had sent on its behalf, nine unwanted and unsolicited text messages to Plaintiff's cell phone. Each message made deceptive and alarming claims that Plaintiff's cell phone was infected with viruses, suspicious files, and risky apps, and each message ended with a hyperlink. Clicking on the link took Plaintiff either directly, or through the natural progression of one or two prompts, to one of Defendant's webpages where Plaintiff was advised to purchase one of Defendant's cybersecurity software products to combat the virus, suspicious files and risky apps Defendant's messages claimed had infiltrated his cell phone. Even after Plaintiff sent a written "do not call" request to Defendant, to which Defendant's in-house lawyer responded (acknowledging that Defendant is aware that some of its marketers engage in this type of conduct), Defendant continued to send, or have sent on its behalf, the same deceptive marketing text messages to Plaintiff. Plaintiff sued Defendant, seeking to certify a class of similarly situated individuals, under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), for Defendant's and/or its agents' failure to honor the National Do Not Call Registry and failure to maintain an internal do not call list. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)–(d).

Defendant's motion to dismiss relies heavily on the self-serving hearsay statements of its in-house counsel, conflates Plaintiff's theory of vicarious liability through agency with an inapplicable standard for an employee-employer relationship, and elides critical facts by dismissing them out of hand as "conclusory" and failing to address them. Defendant's motion to dismiss should be denied.

## II. FACTUAL BACKGROUND

Defendant operates a family of brands—such as Norton, Avast, LifeLock, Avira, AVG, ReputationDefender, and CCleaner—that purport to provide products and services

relating to cybersecurity, privacy, and identity protection. FAC ¶ 2. Defendant claims approximately 500 million users of its products. *Id.* ¶ 3. Defendant has been implementing a growth strategy using multiple market channels to reach new customers globally, including direct-to-customer, indirect partnerships, and freemium channels. *Id.* ¶ 4. Direct-to-customer advertising entails advertising strategies deployed by Defendant to attract new customers and generates significant demand for Defendant's services sold through its e-commerce platform. *Id.* ¶ 5. Defendant also employs indirect partners (referred to hereinafter simply as affiliates), who have distribution channels to refer prospective customers to Defendant and expand Defendant's reach to its affiliates' customer bases. *Id.* ¶ 6. Defendant reports that "We developed and implemented a global partner sales organization that targets new, as well as existing, partners to enhance our partner distribution channels." *Id.* ¶ 7.

Between October 16, 2023, and December 13, 2023, Plaintiff received multiple unwanted text messages that made false claims designed to scare him into agreeing to purchase one of Defendant's products. The table below summarizes the details of each of the violative text messages contained in the FAC:

| **Date** | **Caller ID** | **Content** | **Affiliate code** | **Landing page** |
|---|---|---|---|---|
| 10/16/2023 | (514) 589-0816 | Security warning | 2462623 | Avast.com |
| 10/25/2023 | (514) 296-7854 | Security update | none | Berylliumreporters.xyz |
| 10/27/2023 | (438) 925-3849 | Security notice | none | Specialgivaways.com |
| 11/1/2023 | (514) 594-0851 | Threat alert | 70771 | Lifetricksdaily.com |
| 11/3/2023 | (514) 594-2913 | Device security urgency | 11332_3408 | Iso.panchorotno.com |
| 11/7/2023 | (206) 422-0464 | Antivirus off | 11696_t2fe | Berylliumreporters.xyz |
| 11/30/2023 | (705) 984-0925 | Phone safety alert | none | Newstufftoday.com |

| | | | | |
|---|---|---|---|---|
| 12/9/2023 | (226) 387-8574 | Antivirus deactivated | 70771 | Letcelebratenow.com |
| 12/13/2023 | (647) 774-1440 | App security warning | 3094156 | Lifethedec.autos |

After reading the first message, Plaintiff investigated the message to determine if it was scam or a marketing campaign run by Defendant. FAC ¶ 51. Plaintiff contacted Defendant on October 18, 2023, right after the first unwanted text message was received, to advise Defendant that the message was unwanted, upsetting, and deceptive. FAC ¶ 52. Defendant's in-house counsel, responded to Plaintiff in an email on October 23, 2023, acknowledging Plaintiff's "inquiry regarding an unsolicited text message," apologizing, and stating that "it has happened before." *Id.* ¶ 54. Despite this, the deceptive and unwanted messages promoting Defendant's products and services to Plaintiff continued. *Id.* ¶¶ 58-106.

**III. LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the facts pleaded "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Arizona v. Michael D. Lansky L.L.C.*, No. CV-23-00233-TUC-CKJ, 2024 WL 3657129, at *2 (D. Ariz. May 8, 2024). In addition, "[t]he Court assumes that general allegations embrace the necessary, specific facts to support the claim." *Id.*

In the context of pleading agency relationships, the pleading standard does not require "allegations of minute details of the parties' business relationship" at the motion-to-dismiss stage. *Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (S.D. Cal. Jan. 19, 2024) (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 588 (7th Cir. 2021)). The district court need not decide whether the agency allegations are

sufficient, if true, to prove that a defendant is vicariously liable. *See Bilek*, 8 F.4th at 587. Rather, the court must determine if the allegations, at this early stage, include enough detail to render a theory of agency liability plausible. *Id.*; *see also Lansky*, 2024 WL 3567129, at*2 ("Plaintiff must allege enough facts, if taken as true to suggest that a claim exists").

## IV. ARGUMENT

Defendant's motion to dismiss should be denied because the FAC pleads Defendant is directly liable and vicariously liable under both Counts of the FAC. A pleading is permitted to make alternative statements, and it is sufficient if any one of them is sufficient, regardless of their consistency. Fed. R. Civ. P. 8(d)(2), (3). *See also Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042, 2023 WL 167040, at *5 (D. Ariz Jan. 12, 2023) (finding direct liability adequately pled and vicarious liability theory to be more appropriately tested, if necessary, on a motion for summary judgment).

### 1. The FAC Pleads Defendant Is Directly Liable for One or More of the Unwanted Text Messages

While the TCPA does not define what it means to make or initiate text messages, one can violate the TCPA either by taking the steps necessary to physically place a text message, or by being so involved in the placing of a specific text message as to be deemed to have initiated it. *Lansky*, 2024 WL 3657129, at *14.

Defendant admits that its users come from <u>direct</u>, indirect, and freemium marketing channels. FAC ¶ 124. Defendant uses direct advertising to contact new customers directly and sign them up for its services. *Id.* In the first text, Plaintiff clicked the link and was directed immediately to avast.com, one of Defendant's websites. FAC ¶ 44. For other text messages, the links directed Plaintiff to websites that purported to make statements from Norton. *See* FAC ¶ 63 (Norton Message: We Will Lock Your Device if action is not taken"); FAC ¶¶ 70, 92 (Norton Your phone is severely damaged by (30) viruses. We've noticed that your phone is 28.1% damaged . . ."). The link in the text messages took Plaintiff directly to a website with Norton, one of Defendant's brands, at the top. *See*

*Workman v. CarGuard Admin. Inc.*, No. CV-23-00961-PHX-DLR, 2024 WL 249160, at *2 (D. Ariz. Jan. 23, 2024) (direct liability for robocalls was adequately pleaded because the sales agent emailed a vehicle service contract sample identifying the defendant as the administrator); *Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243-MC, 2024 WL 4333373, *3 (D. Or. Sept. 27, 2024) (direct liability plausibly alleged where the caller identified himself as being affiliated with the defendant and tried to sell defendant's products). Then, when Plaintiff clicked on the action button on the landing page, he was directed to Defendant's website and presented with a webpage prompting him to purchase Defendant's products. FAC ¶¶ 66, 72, 94.

Furthermore, there does not appear to be an affiliate code or method for tracking a third party's marketing activity embedded in the URL for some of the text messages. The FAC explains that in certain of the URLs for Defendant's landing pages, there contains an affiliate code that is used to identify the specific affiliate to be compensated for directing the traffic to Defendant's website. FAC ¶¶ 46–50. An affiliate code is used for attribution, so Defendant can track and compensate the proper affiliate for generating the traffic pursuant to the agreement it has with that affiliate. FAC ¶ 119. It is plausible that text messages that do not contain an affiliate code or tracking would have been sent directly by Defendant—because Defendant would not need to track a third party's activity in order to compensate them. It would make no financial sense that a third party would direct traffic to Defendant's website and not get credit for its efforts. Thus, when Plaintiff was directed to Defendant's landing pages from a text message and the URL had no affiliate code, the obvious conclusion is that no affiliate was involved, and it was Defendant who sent the text messages directly. Defendant is accordingly liable for the messages it sent itself. FAC ¶¶ 67, 73, 95, 118, 119.

Defendant claims that this reasoning amounts to pure speculation. But a motion to dismiss "is not an appropriate procedure for challenging the demonstrable merit of a claim." *Lansky*, 2024 WL 3657129, at *14. Defendant does not suggest an alternative

explanation for the lack of affiliate information (which would be an affirmative matter in any event). Plaintiff has explained his good faith basis for believing Defendant is directly liable for sending two or more of the text messages (as required by 47 U.S.C. § 227(c)) at issue. Given Defendant's statements (in SEC filings) that it engages in direct-to-consumer marketing, the anonymous nature of the conduct at issue, the use of spoofed phone numbers to conceal the identities of the senders of messages, and the lack of affiliate codes in any URLs for specific text messages, the FAC plausibly pleads that Defendant made or initiated these text messages, took the steps necessary to physically send these text messages, or was so involved in the sending of these messages as to be deemed to have initiated them. *See Soo Park v. Thompson*, 851 F.3d 910, 928–29 (9th Cir. 2017) ("Because many of the relevant facts here are known only to the defendant, and in light of the additional facts alleged by Park, we conclude that she has pleaded sufficient facts to state a plausible claim").

Should the Court determine Plaintiff's direct liability allegations suffice, the arguments regarding vicarious liability need not be addressed at this time because Plaintiff has stated a claim for Defendant's direct liability on both Counts. *See Whittaker*, 2023 WL 167040, at *5 (citing Fed. R. Civ. P. 8(d)).

### 2. The FAC Pleads Defendant Is Vicariously Liable for One or More of the Unwanted Text Messages

The federal common law of agency applies to TCPA claims. *Henderson v United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019). There are several ways to establish an agency relationship, including actual authority and ratification. *Id.* at 1073. The FAC plausibly alleges both.

#### a. The FAC Alleges Actual Authority

Defendant relies on *Jones v. Royal Administration Services Inc.* to contend that actual authority over a telemarketer requires control over the manner and means, which is assessed under a 10-factor test. 887 F.3d 443, 447 (9th Cir. 2018). *Jones* is inapposite firstly

because *Jones* was an appeal of summary judgment, not a motion to dismiss. "Questions of fact relevant to determining vicarious liability require discovery and preclude granting the motion to dismiss on this issue." *Lansky*, 2024 WL 3657129, at *9 (D. Ariz. May 8, 2024); *see also Charvat v. Allstate Corp.*, 29 F.Supp.3d 1147, 1151 (N.D. Ill. 2014) (denying defendant's motion to dismiss TCPA case, holding that "it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability"); *Kristensen v. Credit Payment Services*, 12 F.Supp.3d 1292, 1302 (D. Nev. 2014) (denying motion to dismiss claims based on vicarious liability, holding that allegations of a contractual relationship and apparent benefits received by the principal were sufficient at that stage and noting that a plaintiff "need not plead the identity of every player in the alleged scheme nor every nuance of the relationships among the Defendants," because "the information necessary to connect all the players is likely in Defendants' sole possession."); *McCabe v. Caribbean Cruise Line, Inc.*, 2014 WL 3014874, *4 (E.D. N.Y. July 3, 2014) (finding plaintiff's allegation that a robocall was made pursuant to a contract was sufficient to plead vicarious liability); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F.Supp.2d 1253, 1258 (S.D. Cal. 2012) (finding general allegations that "Defendants and their agents directed the mass transmission of wireless spam to the cell phones nationwide[,]" and that one defendant "engaged [the other]," sufficient to plead vicarious liability).

Furthermore, district courts have cautioned against conflating the manner and means test reserved for employment relationships and the traditional common law agency test. In *Brown v. DirecTV, LLC*, the court observed that *Jones* emphasized that its adoption of the 10 factors was limited to the question of vicarious liability via an employment relationship. 562 F. Supp. 3d 590, 608 (C.D. Cal. 2021). Where, as here, an employment relationship is not alleged, the 10-factor manner and means test is not relevant. *Id*.

In *Williams v. PillPack LLC*, the district court also distinguished *Jones*, stating:

> PillPack's reliance on [the manner and means] test is misplaced as the

> Ninth Circuit made clear that the test was only relevant to the question of vicarious liability via an employer relationship. *Jones*, 887 F.3d at 451 n.4 ("We emphasize that our decision to adopt these Restatement factors is limited to the issue before the court. These factors are of use for determining whether a principal, who has hired third-party telemarketers, exercises sufficient control to be held vicariously liable under the TCPA *to the same degree that an employer may be held liable for the actions of its employees* .... We express no opinion on the usefulness of these factors in establishing other common law theories for holding a principal liable for the conduct of its agent.") (emphasis in original). As Williams does not allege such a relationship, the *Jones* factors are not controlling.

644 F. Supp. 3d 845, 852–53 (W.D. Wash. 2022) (emphasis in original).

An agency relationship arises when a principal agrees with an agent "that the agent shall act [1] on the principal's behalf and [2] subject to the principal's control." *Husayn v. Mitchell*, No. 24-1468, 2025 WL 1789956, at *7 (9th Cir. June 30, 2025). The concept of agency is broad. For example, "a principal might employ an agent who acquires information from third parties on the principal's behalf but does not 'deal' in the sense of entering into transactions on the principal's account." Restatement (Third) of Agency § 1.01 (2006). "A principal's manifestation of assent to an agency relationship may be informal, implicit, and nonspecific." Restatement (Third) of Agency § 1.01 cmt. d (2006). "Silence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence." Restatement (Third) of Agency § 1.03 (2006).

"The control need not be total. Agency may arise even when 'the principal lacks the right to control the full range of the agent's activities.'" *Husayn*, 2025 WL 1789956 at *8. The hallmark of an agency relationship is the power to give interim instructions. *Brown*, 562 F. Supp. 3d at 609 (C.D. Cal. 2021) (quoting Restatement (Third) of Agency § 1.01, cmt. f). The principal need not have actually exercised control, so long as it retained the right to control. *Id.*

*Workman v. CarGuard Administration Inc.* illustrates the application of the pleading rules to a claim under the TCPA for vicarious liability. 2024 WL 249160, at *3. That case

involved an artificial or prerecorded phone call to the plaintiff informing her that her car warranty was about to expire. *Id*. at *1. The plaintiff followed the voice prompts, was transferred to a sales agent, and then transferred to a subsequent sales agent, who sent the plaintiff an email attaching an application form for a vehicle service contract on which the defendant was identified as the "Administrator." *Id*.

Defendant filed a motion to dismiss, but the district court denied it, reasoning that both direct liability and vicarious liability were properly plead. *Id*. at *3. The court found the allegations that Defendant "directed that the calls be made," that it "contracted with numerous agents to solicit the sale of its car warranties via telemarketing," and that it had "control over whether, and under what circumstances, it would accept customers" sufficed to plead vicarious liability by agency. *Id*.

In *Brown*, the marketers who were allegedly agents "had the ability to make staffing decisions themselves, trained their own employees, maintained their own internal databases, decided which numbers to dial themselves, and were not provided with any scripts by DirecTV." *Id*. at 609. Even so, "[n]one of that controvert[ed] Plaintiffs' evidence of the degree of interim control that DirecTV had the power to wield." *Id*. The plaintiff was entitled to summary judgment on agency because DirecTV had authority to fire agents at will, could recall accounts at any time for any reason, could disallow subcontractors that the agent sought to use, and had the option to terminate the contract with 60 days' notice. DirecTV required pre-approval of scripts and templates, and set the threshold at which debts could be settled. *Id*. DirecTV audited agents' activities and monitored performance by reviewing data and documentation. *Id*. When DirecTV told the agent to stop autodialing cell phones, the agent complied. *Id*.

Here, the FAC adequately alleges an agreement appointing the affiliates to act on Defendant's behalf and subject to Defendant's control. *See* FAC ¶ 129. The FAC pleads that Defendant authorized affiliates to market its products to consumers using text messages. FAC ¶¶ 126, 136. Prior to any marketing, Defendant and the affiliates engaged

in an application, due diligence, and review process where information regarding business methods, guidelines, contact information, and financial information was shared and agreed upon. FAC ¶ 127. During the process, Defendant learned of the affiliates' marketing methods, their background, and intended practices. FAC ¶ 127. Defendant assigned and provided its affiliates with identification codes for them to use in URLs so that Defendant could track their activity. FAC ¶ 129. Defendant also used the identification codes to pay its affiliates. *Id*. Defendant instructed its affiliates as to which webpages they should direct their traffic, and supplied affiliates with web server resources and APIs to facilitate the automation and scalability of the marketing campaigns. FAC ¶ 131. Defendant developed and implemented an affiliate marketing business model that incentivized affiliates to send deceptive text messages, knowing that would be the result, and benefitted from it. FAC ¶¶ 132-133. At any moment, Defendant could have required the affiliates to stop their unlawful conduct, but Defendant chose not to. FAC ¶¶ 134–135. Taking all these allegations together, the FAC pleads facts allowing a reasonable inference that Defendant manifested assent to its affiliates to send text messages in violation of the TCPA.

The FAC also plausibly pleads Defendant had the right to control the actions of its affiliates, to audit, monitor, perform quality control, inspect, and investigate activities, and to take disciplinary or corrective actions at its discretion. FAC ¶ 130. In fact, the affiliate marketing model conceived, established, and maintained by Defendant incentivized the affiliates' unlawful activity. FAC ¶ 134. Defendant compensated affiliates based on the number of clicks, whereby the more instances an affiliate could cause consumers to navigate to Defendant's websites, the more money the affiliate would earn. *Id*. Because sending mass blasts of unsolicited text messages using deceptive, threatening, and alarming "alerts" and "notices" is an effective (although unlawful) way to generate more revenue, Defendant established the model that fostered the unlawful conduct, knowing that the unlawful conduct was the natural result of the affiliate compensation model it conceived, designed, and maintained. Defendant could have stopped its affiliates at any time by

requiring that they stop, or simply refusing to compensate affiliates for traffic generated by unlawful text messages. FAC ¶¶ 135, 137. Defendant chose not to, and instead elected to continue its illegal marketing practices. FAC ¶¶ 138-141.

**b. The FAC Alleges Ratification**

In addition, the FAC alleges vicarious liability through Defendant's ratification of its affiliates' conduct. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with authority." *Husayn*, 2025 WL 1789956, at *8. Thus, "even if Defendant did not have prior authorization to undertake all the alleged acts," Defendant is still liable for those actions by ratifying them. *Id.* at *9. Contrary to Defendant's position, controlling Ninth Circuit authority holds that there need not be a preexisting agency relationship for ratification to occur. *Henderson*, 918 F.3d at 1074. The affiliates' unlawful conduct can be ratified by Defendant if (1) Defendant accepts the benefits of the conduct while knowing some of the text messages may have violated the TCPA, or (2) if Defendant knows facts that would have led a reasonable person to investigate further. *Id*. at 1075–76.

Defendant argues that the FAC has to allege all of the anonymous text messages Plaintiff received from spoofed numbers employing substantially similar deceptive tactics and selling Defendant's products were sent by a single affiliate. Defendant claims that the last eight text messages were <u>not</u> from the same person who sent the first text message.

Defendant raises factual disputes and issues that should not be raised on a motion to dismiss. At bottom, Defendant's contention that "material differences between the first, and subsequent eight messages demonstrate that Gen—consistent with the statement made by its counsel—removed the third-party responsible for the first message from its marketing-affiliate platform" is not germane to the question of whether Plaintiff states a claim. This is attorney argument, unsupported by any evidence, such as a declaration. It is certainly not implausible to infer that a single affiliate (or the same people behind several affiliates) sent all of the text messages using different affiliate codes, given the similarity

in the methods and unlawful practices used and the repeated targeting of Plaintiff's phone number.

But Defendant's argument is too narrowly focused on the first text message to Plaintiff, as if ratification requires specific knowledge of a recipient receiving unwanted text messages. Ratification can be shown once a principal knows that "some of the calls may have violated the TCPA"—not necessarily the first text message to Plaintiff. *Henderson*, 918 F.3d at 1075. Thus, Defendants' knowledge, or avoidance of the knowledge, of its affiliates' unlawful actions generally suffices to show ratification for all of the unlawful text messages Plaintiff received.

Lastly, Defendant wants credit for providing Plaintiff with a refund for the purchase of a subscription to one of Defendant's products. Defendant argues it evidences a repudiation of the unlawful conduct of its affiliates. This argument fails for many reasons: (1) the FAC adequately pleads Defendant is directly liable for the first text message that precipitated the refund; (2) the refund was processed prior to the email communication with Defendant's counsel so it could not be a repudiation; and (3) the deceptive text messages kept coming long afterward, so the unlawful acts were never repudiated. The time to repudiate its affiliates' unlawful actions was when Defendant first learned, or reasonably should have learned, of its affiliates' unlawful actions. Defendant has acknowledged that it knew about its affiliates' practices, including sending unsolicited text messages, before Plaintiff sent his letter to Defendant, but Defendant chose to ignore those practices or stop them. Defendant did not repudiate its affiliates' conduct; instead, Defendant incentivized it, facilitated it, and benefitted from it. Defendant's practice was to respond to complaints in the way Defendant did for Plaintiff: to deny responsibility, and to refuse to take appropriate action to make the activities stop. FAC ¶ 61. Perhaps Defendant's strategy is to offer a year of free services to those who complain about Defendant's illegal telemarketing strategies rather than correct them, because they are far too profitable for Defendant to abandon. *See* FAC ¶ 61. Indeed, Defendant benefits considerably from its

affiliates' unlawful actions and Defendant knowingly accepts those benefits on a classwide basis, because sending the deceptive text messages that scare potential customers into buying products they do not need with alarming but false claims of vulnerabilities and threats is an effective way to sell Defendant's products. *See* FAC ¶ 60.

## V. CONCLUSION

For the reasons above, the Court should deny Defendant's Motion to Dismiss the FAC, allow Plaintiff to amend the FAC to cure any deficiencies, and grant such other relief as the Court deems appropriate.

**Dated:** July 23, 2025

Plaintiff ELI REISMAN, *individually, and on behalf of himself and all others similarly situated,*

By: */s/ Thomas A. Zimmerman, Jr.*

Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
(admitted *pro hac vice*)

Counsel for Plaintiff and the Class