Max S. Morgan, Esquire (admitted *pro hac vice*)
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr. (admitted *pro hac vice*)
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*tom@attorneyzim.com*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ELI REISMAN, *individually, and on behalf of others similarly situated*,<br><br>        *Plaintiff*,<br>v.<br><br>GEN DIGITAL, INC.,<br><br>        *Defendant*. | Case No. 2:25-cv-01653-PHX-SPL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 1

III. LEGAL STANDARD .......................................................................................... 3

IV. ARGUMENT ........................................................................................................ 3

    A. Binding Ninth Circuit Precedent Interprets Telephone Calls to Include Text Messages ................................................................................ 4

    B. The Ordinary Meaning of Telephone Calls Includes Text Messages ........... 6

    C. The TRACED Act Confirms That Telephone Calls Include Text Messages ................................................................................ 10

    D. The FCC's Inclusion of Text Messages in Telephone Calls Confirms the Propriety of Applying the TCPA to Text Messages ................................... 11

V. CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

*Cases*

*Affiliated FM Ins. Co. v. Hill Phoenix Inc.*,
  No. CV-22-00450-PHX-JJT, 2023 WL 244494 (D. Ariz. Jan. 18, 2023) ..................... 3

*AT & T Commc'ns of Mountain States, Inc. v. State, Dep't of Revenue*,
  778 P.2d 677 (Colo. 1989) ........................................................................................ 4

*Barr v. American Ass'n of Political Consultants, Inc.*,
  591 U.S. 610 (2020) ................................................................................................ 11

*Barton v. Delfgauw*,
  No. 3:21-CV-05610-DGE, 2025 WL 2402131 (W.D. Wash. Aug. 18, 2025) .............. 5

*Bostock v. Clayton Cnty., Ga.*,
  590 U.S. 644 (2020) .................................................................................................. 8

*Bradshaw v. CHW Grp., Inc.*,
  763 F. Supp. 3d 641 (D.N.J. 2025) ............................................................................ 6

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) ................................................................................................ 10

*Crews v. Sun Sols. AZ LLC*,
  No. CV-23-01589-PHX-DWL, 2024 WL 2923709 (D. Ariz. June 10, 2024) .............. 5

*Dawson v. Porch.com*,
  No. 2:20-cv-00604-RSL, 2024 WL 4765159 (W.D. Wash. Nov. 13, 2024) ................ 6

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021) ................................................................................................ 13

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014) ................................................................................... 13

*Gulden v. Liberty Home Guard LLC*,
  No. CV-20-02465-PHX-JZB, 2021 WL 689912 (D. Ariz. Feb. 23, 2021) ................ 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
  896 F.2d 1542 (9th Cir. 1989) ................................................................................... 3

*Loper Bright Enter. v. Raimondo*,
 603 U.S. 369 (2024) .................................................................................... 1, 4, 5, 11

*McLaughlin Chiro. Assoc. Inc. v. McKesson Corp.*,
 606 U.S. 146 (2025) ................................................................................................ 1,6

*Mantha v. Quotewizard.Com,* LLC,
 347 F.R.D. 376 (D. Mass. 2024) ................................................................................. 6

*Melendres v. Arpaio*,
 No. CV-07-2513-PHX-MHM, 2009 WL 2132693 (D. Ariz. July 15, 2009) .............. 11

*Messerlian v. JP Grp. LA*,
 No. CV 23-8451-KK-JPRX, 2025 WL 2074360 (C.D. Cal. May 23, 2025) ................ 5

*Misner v. Empire Auto Protect, LLC*,
 No. 2:24-cv-1282, 2024 WL 4688940 (S.D. Ohio Nov. 6, 2024) ................................ 6

*Ragsdale v. Leadpoint, Inc.*,
 No. 2:24-cv-04542-MCS-SK, 2024 WL 5424125 (C.D. Cal. Nov. 5, 2024) ............... 6

*Satterfield v. Simon & Schuster, Inc.*,
 569 F.3d 946 (9th Cir. 2009) .............................................................................. 1, 4, 5

*Skidmore v. Swift & Co*,
 323 U.S. 134 (1944) ................................................................................................. 11

*Snyder v. Landcar Mgmt. Ltd.*,
 No. CV-22-00705-PHX-DLR, 2023 WL 2614960 (D. Ariz. Mar. 23, 2023) ............... 9

*State v. Espinoza*,
 264 So. 3d 1055 (Fla. Dist. Ct. App. 2019) ................................................................ 3

*United States v. Pacheco*,
 977 F.3d 764 (9th Cir. 2020) ........................................................................... 6, 9, 10

*Warnick v. Dish Network LLC*,
 No. 12-CV-01952-WYD-MEH, 2014 WL 12537066 (D. Colo. Sept. 30, 2014) ......... 7

*Westlands Water Dist. v. Bureau of Reclamation*,
 805 F. Supp. 1503 (E.D. Cal. 1992) ............................................................................ 2

*Wilson v. Hard Eight Nutrition LLC*,
    No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025) ...................... 6, 11

*Wilson v. MEDVIDI Inc.*,
    No. 5:25-CV-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ....................... 6

*Wilson v. Skopos Fin., LLC*,
    No. 6:25-cv-00376-MC, 2025 WL 2029274 (D. Or. July 21, 2025) ............................ 6

*Wisconsin Cent. Ltd. v. United States*,
    585 U.S. 274 (2018) ................................................................................................... 3

**Statutes, Rules, and Regulations**

47 U.S.C. § 227 ....................................................................................................... *passim*

Fed. R. Civ. P. 12 .............................................................................................................. 3

**Miscellaneous Authorities**

*In re Rules & Regs. Implementing the TCPA of 1991*,
    18 F.C.C. Rcd. 14014 (2003) .................................................................................. 12

*In re Rules & Regs. Implementing the TCPA of 1991*,
    30 F.C.C. Rcd. 7961 (July 10, 2015) ....................................................................... 12

*In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*,
    FCC 23-107, No. 02-278, 38 F.C.C. Rcd. 12247,
    2023 WL 8826682 (Dec. 18, 2023) ......................................................................... 14

*Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*,
    89 Fed. Reg. 5098-01 (Jan. 26, 2024) ..................................................................... 12

## I. INTRODUCTION

For more than two decades, there has been no question that the Telephone Consumer Protection Act ("TCPA") protected consumers from unwanted text message solicitations the same as any other unwanted telephone call. Indeed, when enacting the TCPA, Congress specifically instructed the Federal Communications Commission ("FCC") to create regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). The FCC and the Ninth Circuit (and many other courts) have considered the issue and concluded that the best reading of the TCPA includes text messages as "calls."

Nothing about this has changed since the Supreme Court decided *Loper Bright Enter. v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiro. Assoc. Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). Defendant's argument that Plaintiff suddenly has no right of action (despite having one for over two decades) under § 227(c)(5) because text messages are not calls fails for three basic reasons: (1) *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009), forecloses this argument; (2) text messages constitute calls under the ordinary meaning of the term "call;" and (3) Defendant's position makes no sense in light of the purpose of the TCPA.

Defendant's interpretation would render the National Do-Not-Call Registry and the FCC regulations largely meaningless to stop telephone solicitations because the vast majority of Americans have smartphones that receive text messages. Defendant's interpretation would allow anyone to spam consumers with annoying, unwanted text messages, and consumers would be unable to stop them. The Court should deny the motion.

## II. FACTUAL BACKGROUND

Defendant operates a family of brands, such as Norton, Avast, LifeLock, Avira, AVG, ReputationDefender, and CCleaner, that purport to provide products and services relating to cybersecurity, privacy, and identity protection. FAC ¶ 2. Defendant claims

1

approximately 500 million users of its products. *Id*. ¶ 3. Defendant has been implementing a growth strategy using multiple market channels to reach new customers globally, including direct-to-customer, indirect partnerships, and freemium. *Id*. ¶ 4. Direct-to-customer advertising entails advertising strategies that attract new customers and generates significant demand for its services sold through its e-commerce platform. *Id*. ¶ 5. Defendant also employs indirect partners (referred to as "affiliates"), who have distribution channels to refer prospective customers and expand Defendant's reach to affiliates' customer bases. *Id*. ¶ 6. Defendant reports that "We developed and implemented a global partner sales organization that targets new, as well as existing, partners to enhance our partner distribution channels." *Id*. ¶ 7.

Between October 16, 2023, and December 13, 2023, Plaintiff was berated with unwanted text messages designed to drive a consumer to Defendant's websites to make a purchase. The table below summarizes the details of each of the violative text messages contained in the FAC:

| Date | Caller ID | Content | Affiliate code | Landing page |
|---|---|---|---|---|
| 10/16/2023 | (514) 589-0816 | Security warning | 2462623 | Avast.com |
| 10/25/2023 | (514) 296-7854 | Security update | none | Berylliumreporters.xyz |
| 10/27/2023 | (438) 925-3849 | Security notice | None | Specialgivaways.com |
| 11/1/2023 | (514) 594-0851 | Threat alert | 70771 | Lifetricksdaily.com |
| 11/3/2023 | (514) 594-2913 | Device security urgency | 11332_3408 | Iso.panchorotno.com |
| 11/7/2023 | (206) 422-0464 | Antivirus off | 11696_t2fe | Berylliumreporters.xyz |
| 11/30/2023 | (705) 984-0925 | Phone safety alert | none | Newstufftoday.com |
| 12/9/2023 | (226) 387-8574 | Antivirus deactivated | 70771 | Letcelebratenow.com |
| 12/13/2023 | (647) 774-1440 | App security warning | 3094156 | Lifethedec.autos |

1    After reading the first message, Plaintiff investigated the message to determine if it was scam. FAC ¶ 51. Plaintiff contacted Defendant on October 18, 2023, shortly after the first unwanted text message, to advise Defendant that the message was unwanted, upsetting, and deceptive. FAC ¶ 52. On October 23, 2023, Defendant's in-house counsel responded to Plaintiff in an email acknowledging Plaintiff's "inquiry regarding an unsolicited text message," apologizing, and stating that "it has happened before." *Id*. ¶ 54. Despite this, the unsolicited text messages to Plaintiff continued. *Id*. ¶ 58.

## III.  LEGAL STANDARD

Under Rule 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." A motion for judgment on the pleadings can be brought to challenge the legal sufficiency of the opposing party's pleading. *Westlands Water Dist. v. Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992). The motion should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A Rule 12(c) motion is functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and the same legal standard applies to both motions. *Affiliated FM Ins. Co. v. Hill Phoenix Inc.*, No. CV-22-00450-PHX-JJT, 2023 WL 244494, at *1 (D. Ariz. Jan. 18, 2023).

## IV.  ARGUMENT

It is a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary, contemporary, common meaning at the time Congress enacted the statute." *Wisconsin Cent. Ltd. v. United States,* 585 U.S. 274, 284 (2018). And while the meaning of the words cannot change, "new applications may arise in light of changes in the world." *Id*. So, whether or not text messages were widely in use when the TCPA was enacted has no bearing on whether text messages are regulated as calls. *See State v. Espinoza*, 264 So. 3d 1055, 1067 (Fla. Dist. Ct. App. 2019) (Bitcoin was a "medium

3

of exchange" under the statute enacted before Bitcoin was invented); *see also AT & T Commc'ns of Mountain States, Inc. v. State, Dep't of Revenue*, 778 P.2d 677, 682 (Colo. 1989) ("Under ATTCOM's reasoning, the legislature would be required to reenact this type of statute whenever new technology or changed conditions, including changes in federal law, might affect the scope of the statute's coverage.").When a statute expressly delegates authority to an agency, the role of the reviewing court is to independently interpret the statute and effectuate the will of Congress subject to constitutional limits . . . by ensuring that the agency engaged in "reasoned decisionmaking." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024).

The best reading of the TCPA is that the term "call" includes text messages. The FCC is the agency with express authority under 47 U.S.C. § 227(c) to protect consumers from unwanted telephone solicitations, and to interpret and enforce the TCPA. The FCC has consistently held for as long as it has been an issue that text messages are subject to the TCPA. *See In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls"). The FCC's interpretation is eminently reasonable. It is consistent with the meaning of the statutory language at the time of its enactment. It is necessary to achieve the aims of the TCPA.

### A.    Binding Ninth Circuit Precedent Interprets Telephone Calls to Include Text Messages

The Ninth Circuit has concluded that text messages are telephone calls under the TCPA. In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the Ninth Circuit concluded that the best reading of "[t]he language and purpose of the TCPA support[s] the conclusion that the use of an ATDS to make any call, regardless of whether that call" is followed by a written, aural, or visual substantive communication "is prohibited." *Id*. at 954. Footnote 3 of the Opinion explains that the word "call" "has several

4

plain and ordinary meanings." Given that the TCPA was enacted to regulate the receipt of automated telephone calls, Congress used the word "call" to refer to an attempt to communicate by telephone." *Id*. Because a text message is always an attempt to communicate with someone directly to their telephone, it is a telephone call.

Upon concluding that the best reading of telephone calls includes text messages, the *Satterfield* Court considered the FCC's decisions regarding the question because the answer to the question was not clear and unambiguous. *Id*. Under current law, Supreme Court precedent instructs courts to impose the best reading of a statute without deference to any administrative agency interpretation. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—"the reading the court would have reached" if no agency were involved"). The reasoning in *Satterfield* leaves no doubt that the best reading is that calls include text messages, and that reasoning applies to "any calls"—calls using specific technologies like those regulated in § 227(b), or telephone solicitations regulated by § 227(c). *See Crews v. Sun Sols. AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 WL 2923709, at *1, n.1 (D. Ariz. June 10, 2024) (under *Satterfield*, text messages and voice calls are the same for purposes of § 227(b) and § 227(c)).

*Satterfield* remains binding law. In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954. Although *Satterfield's* analysis employed *Chevron* deference, which is no longer operative, *Satterfield* remains the law of the Circuit and is not clearly "irreconcilable" with higher authority. *Barton v. Delfgauw*, No. 3:21-CV-05610-DGE, 2025 WL 2402131, at *3, n.1 (W.D. Wash. Aug. 18, 2025) ("Defendants argue that there is no liability for text messages at all under § 227(c)(5), only phone calls . . . This argument is foreclosed by Ninth Circuit precedent" citing *Satterfield*); *see also Messerlian v. JP Grp. LA*, No. CV 23-8451-KK-JPRX, 2025 WL 2074360, at *5 (C.D. Cal. May 23, 2025) (citing *Satterfield* for

5

the holding that "a text message is a 'call' within the meaning of the TCPA).

District courts in the Ninth Circuit have concluded text messages are telephone calls under § 227(c) since *Loper Bright* and *McLaughlin* were decided. *Wilson v. MEDVIDI Inc.*, No. 5:25-CV-03996-BLF, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025), interpreted the term "calls" in § 227(c)(5) to include text messages. The court reasoned that subsection (c)(5) applies to live calls and automated calls. Its focus is on protecting residential telephone number subscribers from solicitations, and it is agnostic about the technology used. *Id*. Thus, interpreting calls to include text messages conformed to the plain meaning of the law and its purpose. *Id*. at *3; *see also Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815, at *4 (D. Or. June 27, 2025) ("Section 227(c), titled 'Protection of subscriber privacy rights,' focuses not on the equipment used to generate and transmit calls but on end-user protections"). Denying Defendant's motion would be consistent with the holdings of numerous courts throughout the nation.[1]

### B.   The Ordinary Meaning of Telephone Call Includes Text Messages

Defendant correctly states that the statutory interpretation analysis must begin with the ordinary, plain meaning of the term "call." That entails a "turn first to the dictionary definition." *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). Defendant leaves

---

[1] *See Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 WL 4765159, at *5 (W.D. Wash. Nov. 13, 2024) ("The Court agrees with this analysis regardless whether deference to the agency's interpretation is appropriate or not."); *Ragsdale v. Leadpoint, Inc.*, No. 2:24-cv-04542-MCS-SK, 2024 WL 5424125, *3 (C.D. Cal. Nov. 5, 2024) (recognizing continued application of deference to an agency's interpretations of its own regulations after *Loper Bright*); *Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) ("Defendant's argument that the FCC lacks authority to do so is undermined by the statutory structure of the TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance."); *Mantha v. Quotewizard.Com,* LLC, 347 F.R.D. 376, 387 (D. Mass. 2024) ("the texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto Protect, LLC,* No. 2:24-cv-1282, 2024 WL 4688940, at *4 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)); *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 649 n.5 (D.N.J. 2025) (text messages are considered calls under § 227(c)(5)).

6

out the contemporaneous definition of "call" because its breadth is inconsistent with Defendant's attempt to construe the term narrowly.

Merriam-Webster's Dictionary, Ninth Edition, defined "to call" in many ways at the time of TCPA's enactment (as it does now). The most relevant definition is "d. to get or try to get into communication by telephone." In the context of the TCPA then, a telephone call is an attempt to communicate by telephone. Text messages are attempts to communicate by telephone. They pass through the wireless telephone network to wireless telephone numbers. They send an alert to the owner of the phone when they arrive, just like any other kind of telephone call. They show up on the consumer's phone bill. If unwanted, they invade the owner's privacy and distract like any other unwanted telephone call.

Nothing in the 1991 definition of "to call" suggests a limitation in the form the communication is to take, whether by voice or text. When Congress granted a right to people on the National DNC who received telephone calls, it meant any signal to a telephone conveying an attempt to communicate. If a telephone call is a "call" even if it is never answered, then how can its status as a telephone call depend on a form of communication that may never even occur? *Warnick v. Dish Network LLC*, No. 12-CV-01952-WYD-MEH, 2014 WL 12537066, at *15 (D. Colo. Sept. 30, 2014) (generally, TCPA violations do not require that the call be answered). And if the call goes unanswered, the caller may have the option to leave a message. A text message is the equivalent of a voicemail (or, in the vernacular of 1991, a message on an answering machine), that the caller may leave *after* the call is placed and connects to the recipient. But a call must always precede the message, text or otherwise.

Defendant's plain language argument uses the rhetorical trick of pitting text messages against voice calls by proposing the example "Sally sent me a text message inviting me over/Sally sent me a telephone call inviting me over." Def's Motion at 10. By using an example where there is one communication in the past, the interpreter is forced to

7

choose between a text message and a voice call because it must have been one or the other. The TCPA applies broadly to all attempts to communicate by telephone. It is not boxed in like Defendant's example.

Defendant's example also takes the interpreter away from the technical terminology of the TCPA where terms like automatic telephone dialing systems and telephone solicitations are regulated, to a social setting where an acquaintance is inviting someone over. But a present-day conversational use of the term call is not germane to the statutory interpretation question that Defendant's motion raises. *See Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 666 (2020) (rejecting interpretation of a statute determined by the conversational answer and not the statute's strict terms). Defendant urges the Court to "fast forward to the present day." But the question is not what a person living in 2025 would mean by "call" in one out-of-context situation. The question is what protections did Congress intend to give consumers by using the term "call" in 1991, when it enacted the TCPA, provided a private right of action to protect the privacy rights of telephone subscribers to be free from unwanted telephone solicitations, and left it broadly to the FCC to implement rules and regulations to achieve that end.[2]

In any event, other examples illustrate that, in ordinary usage, a person's request not to be "called" includes a request not to be texted. If Sally states that she will be in court in the morning and not to call her until lunch, any person would reasonably interpret that as a request not to call or text. Likewise, if Sally places her wireless telephone number on the National DNC list or instructs a company to add her number to its do-not-call list, it is clear

---

[2] Notably, Defendant has not disputed that text messages constitute "telephone solicitations." The TCPA and FCC regulations prohibit telephone solicitations to telephone numbers listed on the National Do Not Call Registry. Thus, Defendant is not arguing that the sending of unwanted text messages is permitted under the TCPA, just that there is not a private right of action to consumers to enforce the prohibition against telephone solicitations in the form of text messages. It makes little sense that Congress would delegate broad authority to the FCC to implement the aims of the TCPA through rules and regulations but quietly seek to impose a restriction against regulating text messages or allowing the FCC to determine that the regulations are enforceable by the consumers they were designed to protect.

that she desires to be free from telephone solicitations in all forms, whether they are by text message or voice.

Other provisions of the TCPA enacted in 1991 support a broad reading of "call." "When analyzing a statute, we must 'look to the provisions of the whole law' to determine the provision's meaning." *United States v. Pacheco*, 977 F.3d 764, 768 (9th Cir. 2020). In 1991, Congress considered that it was possible to place a call to a phone number assigned to a paging service. The TCPA prohibits the use of autodialers to call pagers unless done with prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, any definition of call must include calls to pagers. Calls to pagers do not involve two-way voice communications. And, when the TCPA was enacted, alphanumeric pagers were in use allowing for direct text and alphanumeric messages to be sent to such devices. Defendant's narrow interpretation of call is irreconcilable with Congress' prohibition against making any call using an autodialer to a pager without prior express consent.

Furthermore, courts have applied the TCPA to ringless voicemail technology ("RVM") under a broad interpretation of the term call. *See Snyder v. Landcar Mgmt. Ltd.*, No. CV-22-00705-PHX-DLR, 2023 WL 2614960, at *3 (D. Ariz. Mar. 23, 2023), in which the court held.

> RVM[s] can cause [] pre-recorded messages to end up on answering machines without first ringing the telephone associated with that answering machine. But whether a phone rings or not, a RMV enables a telemarketer to "get in touch" with a consumer via telephone by communicating a message to the consumer's voicemail for the consumer to hear. And it's not clear why leaving a voicemail using "ringless" technology would be any less of a nuisance or invasion of privacy or ameliorate the "powerless[ness]" consumers feel when they confront an answering machine with unsolicited, prerecorded telemarketing calls.

The same reasoning applies to text messages, as text messages enable a telemarketer to get in touch with a consumer via a telephone. They are at least as equally invasive as a voice call. Defendant's proposed narrow re-interpretation of TCPA calls conflicts with the

9

broad interpretation of calls applying to RVM technologies.

### C. The TRACED Act Confirms That Telephone Calls in § 227(c)(5) Include Text Messages

Defendant construes significance from the fact that the TRACED Act of 2019 expressly protects consumers from unwanted text messages with misleading or inaccurate "caller identification services." To the limited extent that the Congress in 2019 is relevant to the question of statutory interpretation at issue here, the fact that the TRACED Act explicitly covers "text messages" favors Plaintiff.[3] It shows that Congress believes the TCPA's protections for consumers' privacy rights apply equally to text messages. *United States v. Pacheco*, 977 F.3d 764, 769 (9th Cir. 2020) ("That Congress has continually expanded the coverage of the statute also militates against Pacheco's request that we construe the statute narrowly.").

The protections granted by the TRACED Act, codified in § 227(e), apply equally to text messages and voice services. There are no extra protections or special treatment for "voice services." For both text messages and voice services, the statute prohibits misleading or inaccurate *caller* identification information. 47 U.S.C. § 227(e)(1). Congress leaves no doubt that § 227(e) applies to text messages, which reinforces the fact that the policy aims of the TCPA in § 227(c) are advanced by interpreting telephone calls to include text messages. There was no reason in 2019 to amend the TCPA to expressly include text messages in § 227(b) or § 227(c) because there was no dispute at the time that these provisions covered text messages. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'"). If Congress in 2019 desired a different policy outcome, it could have amended those provisions at that time to explicitly carve out text messages. It did not; reflecting the

---

[3] 47 U.S.C. § 227(e)(8)(C) defines text message to include any message consisting of text, images, sounds, or other information sent as an SMS or MMS message to or from a 10-digit telephone number or N11 service code. As alleged in the FAC, Defendant violated 47 U.S.C. § 227(e)(1) when it spoofed phone numbers. *See* FAC at 8, n.8

consensus among Americans in their "disdain for robocalls." *Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020).

In addition, the 2019 Congress that enacted the TRACED Act construed calls to include text messages for purposes of 47 U.S.C. § 227(i), where it provided a deadline for the FCC to prescribe regulations to establish a process for sharing information regarding calls made or text messages sent in violation of subsection (b). As explained above, subsection (b) of § 227 generally prohibits the making of "any call" using an autodialer or prerecorded/artificial voice message. Thus, in 2019, Congress interpreted "any call" in § 227(b) as including text messages, and endorsed that outcome. Because subsection (b)'s reference to "any call" includes "text messages" as defined in § 227(e), there is no textual basis or policy reason for concluding subsection (c)'s calls excludes text messages. *See Melendres v. Arpaio*, No. CV-07-2513-PHX-MHM, 2009 WL 2132693, at *11 (D. Ariz. July 15, 2009) ("A term appearing in several places in a statutory text is generally read the same way each time it appears").

### D. The FCC's Inclusion of Text Messages in Telephone Calls Confirms the Propriety of Applying the TCPA to Text Messages

Under *Skidmore*, which predated *Chevron* deference, a court may give an agency judgment "great weight" that "'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore v. Swift & Co*, 323 U.S. 134, 140 (1944)). As *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815, at *4 (D. Or. June 27, 2025) (quoting *Loper Bright*, 603 U.S. at 388).

"The FCC has confirmed that text messages are calls subject to the TCPA." *Gulden*

11

*v. Liberty Home Guard LLC*, No. CV-20-02465-PHX-JZB, 2021 WL 689912, at *5 (D. Ariz. Feb. 23, 2021) (internal quotes and alterations omitted). Since the FCC first addressed the question in 2003, it has consistently held this position to the present, throughout various administrations and technological advances.

In 2003, the FCC affirmed that text messages were subject to the prohibition in § 227(b) "to make any call" using autodialers in a section with the heading "Telemarketing Calls to Wireless Numbers." *In re Rules & Regs. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14115 at ¶ 165 (2003). In 2015, the FCC reiterated that text messages were subject to "the same consumer protections under the TCPA as voice calls." *In re Rules & Regs. Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961, 8016–17, ¶ 107 (July 10, 2015). In 2024, the FCC codified that "the National DNC Registry's existing protections extends to text messages." *See* Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098-01 (Jan. 26, 2024).

Defendant erroneously asserts that in all of the FCC's various pronouncements that the TCPA's references to "calls" includes text messages, it never explicitly rendered that decision in the context of § 227(c)(5). The *Wilson* court labeled this argument "tortured reasoning." 2025 WL 2856295, at *3. The facts are that the FCC has consistently stated that it considers text messages to be "calls" under the TCPA. The FCC's position is consistent and clear. Unreasonably narrowing the FCC's reasoning is unwarranted, especially when § 227(c) regulates telephone solicitations, irrespective of the technology used.

Defendant asserts that its position is supported by the FCC's statement that automated technologies in subsection (b) are more invasive than live calls. But text messaging apps allow for automated calls that pose a far greater threat to privacy than

12

anything in existence in 1991.[4] They are automated calls that cannot be blocked, ignored, and stay on a phone until affirmatively deleted by the owner. The caller types one message that he can broadcast to millions of smartphones with the click of a button. Once that is done, millions of consumers' pockets vibrate in unison, wasting incalculable hours in the aggregate, and calling consumers' attention away from their many responsibilities and duties. According to Defendant, there is nothing anybody can do to stop it.

As the Ninth Circuit has reasoned:

> [t]he nature of cell phones renders the restriction of unsolicited text messaging all the more necessary to ensure . . . privacy. After all, it seems safe to assume that most cellular users have their phones with them when they are at home. Campbell–Ewald itself notes that in many households a cell phone *is* the home phone. In fact, recent statistics suggest that over 40% of American households now rely exclusively on wireless telephone service.

*Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876–77 (9th Cir. 2014).

The FCC explained its reasoning for clarifying and codifying the DNC protections to cover text message solicitations, as follows:

> Consumers increasingly rely on text messaging to stay in touch with friends and family, to do business, communicate with their child's school, and get information from their government. On many devices, people immediately see some or all of the messages once received on the device, whereas they have the option to ignore unwanted calls. This causes consumers to open their texts quickly because texts are an expected trusted source of communications, not annoyance and scams. The rise of junk texts jeopardizes consumer trust in text messaging. The increase of unwanted and illegal texts also frustrate consumers, and scam texts can cause serious harm. Scam texts can contain links to phishing campaigns and load malware onto unsuspecting consumers' phones, leading to fraud and other harms. The Federal Trade Commission (FTC) reports that text messaging scams cost consumers $86 million in 2020 and $326 million in 2022. Other estimates show higher losses, e.g., over $20 billion in 2022.

---

[4] Text messaging applications were considered to be technology regulated by § 227(b) as an automatic telephone dialing system until the Supreme Court decided *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021). Thus, until that decision, text messages sent *en masse* (telephone solicitation or otherwise) without prior express consent to a cellular phone (whether on the National DNC or not) was a violation of the TCPA. That § 227(b) restricted text messages more completely than § 227(c) explains the case law and the FCC's focus on § 227(b) when considering text messages.

13

*In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls,* FCC 23-107, No. 02-278 at ¶ 26, 38 F.C.C. Rcd. 12247, 2023 WL 8826682, at *7 (Dec. 18, 2023), ¶ 1.

In 1991, the ordinary meaning of the term "telephone calls" was broad enough to include text messages. Text messages have been regulated by the TCPA as telephone calls ever since they rose to prominence, consistent with the language and the policy aims of the TCPA. Defendant provides no justification for this Court to deviate from this long-standing precedent.

## V. CONCLUSION

For the reasons set forth above, Plaintiff requests that Defendant's motion for judgment on the pleadings be denied, and such other relief as the Court deems appropriate.

**Dated:** October 23, 2025

Plaintiff ELI REISMAN, *individually, and on behalf of himself and all others similarly situated,*

By: */s/ Thomas A. Zimmerman, Jr.*
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
**ZIMMERMAN LAW OFFICES, P.C.**
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone

Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
max.morgan@theweitzfirm.com

Counsel for Plaintiff and the Class