Buzzi L. Shindler (SBN: 020001)
**BUCHALTER,**
 **A PROFESSIONAL CORPORATION**
15279 North Scottsdale Road, Suite 400
Scottsdale, AZ 85254-2659
Telephone: 480.383.1800
Fax: 480.824.9400
Email: bshindler@buchalter.com

Artin Betpera (admitted *pro hac vice*)
**BUCHALTER,**
 **A PROFESSIONAL CORPORATION**
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
Telephone: 949.760.1121
Fax: 949.720.0182
Email: abetpera@buchalter.com

Attorneys for Defendant Gen Digital Inc.

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELI REISMAN,<br><br>    Plaintiff,<br><br>  v.<br><br>GEN DIGITAL INC.,<br><br>    Defendant. | No. 2:25-cv-01653-PHX-SPL<br><br>**DEFENDANT GEN DIGITAL INC.'S REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[FED. R. CIV. P. 12(c)] |

## I. INTRODUCTION

Plaintiff's opposition is principally focused on the meaning of the words "make any call" used in 47 U.S.C. § 227(b)(1)(A), and relies almost entirely on authorities that have interpreted that specific statutory language to include a text message. But that is not the statutory language the Court has been asked to interpret. Instead, the question presented in Gen's motion is what Congress meant when it used the words "telephone call" in delimiting the scope of the private right of action under 47 U.S.C. § 227(c)(5). "That Congress used different language in these two provisions [of the TCPA] strongly suggests that it meant for them to work different." *Stanley v. City of Sanford, Fla.*, 606 U.S. ___, 145 S. Ct. 2058, 2064 (2025). So the logic, analysis, and authorities presented by Plaintiff in his opposition—almost all of which focuses on the meaning of the word "make any call" in Section 227(b)—are hardly relevant, nor are they particularly helpful in interpreting the meaning of the words "telephone call" used in Section 227(c)(5).

The remainder of Plaintiff's opposition consists of policy arguments, and speculation over the consequences of interpreting the statutory language "telephone call" in accordance with its plain meaning. But because the statutory text is clear, the interpretive process begin and ends with the text. Plaintiffs' policy arguments are not germane to that process.

In order to accept Plaintiff's interpretation of the words "telephone call" to mean "text message" the Court would need to suspend common sense, contort the English language, and ignore the plain meaning of the statutory text. As discussed below, a "telephone call" has never, in any context, meant a "text message". And Plaintiff's approach of conflating the words "any call" used elsewhere in the statute with "telephone call" used in Section 227(c)(5) does not result in the best reading of the statutory language, or even one that comports with the basic rules of statutory construction.

## II. DISCUSSION

### A. Plaintiff's Focus On the Meaning of the Words "Any Call" in 47 U.S.C. § 227(b)(1)(A) is Misplaced Because Congress Used Different Words—"Telephone Call"—When Delimiting the Private Right of Action Under Section 227(c)(5)

"[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Chenau v. Garland*, 997 F. 3d 916, 920 (9th Cir. 2021). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id*.

Almost all of Plaintiff's opposition is focused on the meaning of the words "to make any call" used in 47 U.S.C. § 227(b), versus the words "telephone call" used in Section 227(c)(5). See e.g. Opposition, 4:10-11 ("[t]he best reading of the TCPA is that the term "call" includes text messages."); Opposition, 8:12-14 ("The question is what protections did Congress intend to give consumer by using the term "call" in 1991[.]"); Opposition, pp. 4-9.

However, as discussed in Gen's moving papers, these are two distinct subsections of the TCPA that regulate different things, and use different words to accomplish their purposes. See Motion, Doc. 49 at 8:16-9:8. Section 227(b)(1)(A) more broadly prohibits making "<u>any</u> call" using certain types of technology (i.e., automatic telephone dialing systems and pre-recorded voice calls) to certain types of telephone lines (i.e., 911 lines, hospital lines, pager lines, and cell lines). In contrast, Section 227(c)(5)'s private right of action covers a specific type of call—a "telephone call"—based on the content of that call (telephone solicitations) made to a specific type of person (a residential subscriber). 47 U.S.C. § 227(c)(1), (5).

Plaintiff effectively argues that the words "any call" used in Section 227(b), and "telephone call" used in Section 227(c)(5) are one in the same, so both terms encompass text messages. But Plaintiff's reasoning ignores that, when delineating the scope of the private right of action under Section 227(c)(5), Congress used *different* words than Section 227(b)—specifically by omitting the word "any" before "call" and replacing it with the word "telephone". "That Congress used different language in these two provisions strongly suggests that it meant for them to work differently. . . After all, when a document uses a term in one place and a materially different term in another, " 'the presumption is that the different term denotes a different idea.' " *Stanley v. City of Sanford, Fla.*, 606 U.S. ___, 145 S. Ct. 2058, 2064 (2025).

It is for this reason that the Ninth Circuit's opinion in *Satterfield v. Simon & Shuster, Inc.*, 569 F. 3d 946, 953 (9th Cir. 2009)—which Plaintiff argues controls here—is neither binding nor particularly helpful. Plaintiff asserts that the *Satterfield* court "concluded that text messages are telephone calls under the TCPA." Opposition, 4:21-23. This is a misleading characterization of the holding in *Satterfield*. The Ninth Circuit in *Satterfield* was not concerned with, and did not interpret the words "telephone call" used in 47 U.S.C. § 227(c)(5). Instead, the court only interpreted the words "to make any call" appearing in 47 U.S.C. § 227(b)(1)(A). *Satterfield*, 569 F. 3d at 953 ("The precise language at issue here is what Congress intended when it said 'to make any call' under the TCPA.") And in doing so, the court deferred under the now-overruled *Chevron* doctrine[1] to the FCC's interpretation "that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)." *Id*. at 952.

In reaching its holding, the *Satterfield* court found that the FCC's interpretation of the word "call" was reasonable because the dictionary definition of the verb "to call" means "to communicate with or try to get into communication with a person by a

---

[1] See *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

telephone." *Id*. at 953-54. And based on this definition, the court found that a "text message" could include a "call" because "text messaging is a form of communication used primarily between telephones." *Id*. at 954.

Plaintiff urges the Court to adopt the same interpretation of "telephone call" based on the same logic. Opposition, 5:18-6:13. But that logic does not make sense when applied to the words "telephone call". That is because when Congress drafted Section 227(c)(5), it deliberately omitted the word "any" to describe the type of "calls" that were encompassed by the private right of action, and replaced it with "telephone". It did so because Congress was describing a specific type of call—a "telephone call", not just "any call"—that is within the scope of Section 227(c)(5)'s private right of action.

The dictionary definition of the word "telephone" illuminates why Congress could never have intended the words "telephone call" to mean a text message, no matter how technology may have evolved after passage of the TCPA. A "telephone" is "a device by which sound (such as speech) is converted into electrical impulses and transmitted (as by wire or radio waves) to one or more specific receivers." Telephone, Merriam-Webster's Collegiate Dictionary (11th Ed. 2019)[2]; see also Telephone, American Heritage Dictionary, (5th Ed. 2012)[3] ("An instrument for simultaneously transmitting and receiving speech or other sounds over a distance by converting the sounds into signals that are sent to a similar instrument and converting them back into sounds.") In light of the common meaning of the word "telephone", the term "telephone call" cannot mean a "text message" because a text message does not involve the transmission of "sounds". This leads to the inescapable conclusion that when Congress used the words "telephone call" under Section 227(c)(5)—as opposed to "any call" in Section 227(b)—it meant what everyone has

---

[2] Available at https://www.merriam-webster.com/dictionary/telephone (last visited Oct. 29, 2025)
[3] Available at https://ahdictionary.com/word/search.html?q=telephone (last visited Oct. 29, 2025).

DEFENDANT GEN DIGITAL INC.'S REPLY TO
OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

BUCHALTER 106279479v1

always understood those words to mean: a voice call.

To interpret "telephone call" in the manner urged by Plaintiff would render the word "telephone" superfluous. *Beisler v. Comm'r*, 814 F.2d 1304, 1307 (9th Cir. 1987) ("We should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress.")  The Court must presume that Congress acted intentionally by omitting the word "any" and replacing it with "telephone" to describe the type of "call" that is within the scope of Section 227(c)(5)'s private right of action. *Chenau*, 997 F. 3d at 920.  If, as argued by Plaintiff, the word "telephone call" means the same thing as "any call" in Section 227(b), then the word "telephone" does nothing, and has no meaning.  But as explained above, the word "telephone" does work by modifying the word "call" to specify the type of call subject of Section 227(c)(5)'s private right of action: a voice call, and not a text message[4].

### B.    Congress's Regulation of Other Types of Technology, or its Use of the Words "Text Message" In Neighboring Provisions of the TCPA Does not Support Plaintiff's Interpretation of the Words "Telephone Call" to Mean "Text Message"

Plaintiff argues "[o]ther provisions of the TCPA enacted in 1991 support a broad reading of 'call.'"  Opposition, 9:3-10:1.  But, again—the Court is not being asked to interpret the word "call" in isolation, or as used in Section 227(b).  In any event, none of the "other provisions" referenced by Plaintiff support an interpretation of the words

---

[4] Plaintiff also relies on the District Court's ruling in *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) which concluded that a "telephone call" means a text message. Opposition, 6:2-9. However, the court's interpretation is not the best reading of the statute for the same reasons discussed above—(1) it conflates the words "any call" used in Section 227(b) with "telephone call" used in Section 227(c); (2) is contrary to the presumption that when Congress uses different words in different parts of the statute, it means different things; (3) does not give effect to the word "telephone" which modifies "call", and in doing so reads the word "telephone" out of the statutory text; and (4) is contrary to the plain meaning of "telephone call". Plaintiff also relies on *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025), but that ruling concerned the meaning of "residential subscriber" used in Section 227(c)(5), not "telephone call", so it has no application here. See Opposition, 6:9-13.

"telephone call" to mean text message. Those other provisions use different words, such as "paging service", and "artificial or prerecorded call"—none of which appear in Section 227(c)(5). And Plaintiff's argument runs straight into the presumption that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Chenau v. Garland*, 997 F. 3d 916, 920 (9th Cir. 2021). Whatever words Congress may have used in other parts of the statute, the fact of the matter is that "the private right of action Congress created exists only for those who received multiple 'telephone calls.'" *Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-477-AW-MAF, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

Plaintiff also argues that because "the TRACED Act explicitly covers 'text messages'" this must mean that the word "telephone call" means "text message". Opposition, 10:2-11:14. Plaintiff's argument only undermines his position. "In addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *El Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:250cv000847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 25, 2025) (holding that the words "telephone call" used in Section 227(c)(5) do not mean "text message".)

### C. Plaintiff's Policy Arguments Are Not Relevant to the Question of Whether the Words "Telephone Call" Used In Section 227(c)(5) Mean "Text Message"

Plaintiff makes a number of policy arguments throughout his opposition concerning the ubiquity of text messaging and its supposed invasiveness compared to telephone calls. See Opposition, pp. 12-13. He also speculates about the purported consequences of interpreting the words "telephone call" in a manner consistent with the plain meaning of the statutory text. See Opposition, 1:18-23. None of these arguments

7

are germane to the question of statutory interpretation presented in Gen's motion.

Where, as here, "the statutory language and structure answer an interpretation question, resorting to judicial evaluation of policy considerations is inappropriate." *Lira v. Herrera*, 427 F.3d 1164, 1173 (9th Cir. 2005). The Supreme Court had this to say about the sort of policy arguments advanced by Plaintiff here:

> With that, the employers . . . fall back to the last line of defense for all failing statutory interpretation arguments: naked policy appeals. If we were to apply the statute's plain language, they complain, any number of undesirable policy consequences would follow. Gone here is any pretense of statutory interpretation; all that's left is a suggestion we should proceed without the law's guidance to do as we think best. But that's an invitation no court should ever take up. The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress. When it comes to statutory interpretation, our role is limited to applying the law's demands as faithfully as we can in the cases that come before us. As judges we possess no special expertise or authority to declare for ourselves what a self-governing people should consider just or wise. And the same judicial humility that requires us to refrain from adding to statutes requires us to refrain from diminishing them.

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 680–81 (2020).

Ultimately, "the court's role is not to look beyond clear language to ascertain Congress's purpose. Instead, the best evidence of that purpose is the language of the statute itself." *Davis v. CVS Pharmacy, Inc.*, No. 4:24-CV-477-AW-MAF, 2025 WL 2491195, at *3 (N.D. Fla. Aug. 26, 2025) (rejecting similar policy arguments in holding that the words "telephone call" used in Section 227(c)(5) do not mean text message); see also *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025) ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025. The Court confines itself to its assigned role which does not include legislating.") Because the statutory text of the TCPA is clear, Plaintiff's policy arguments are not appropriate considerations when interpreting the words "telephone call" used in Section 227(c)(5). And the clear language

used by Congress supplies the answer to the question of statutory interpretation presented in this motion: that the word "telephone call" does not mean "text message".

### III. CONCLUSION

For the reasons set forth in Gen's moving and reply briefs, Gen respectfully requests that the Court grant judgment on the pleadings in favor of Gen.

DATED: October 30, 2025         **BUCHALTER, A PROFESSIONAL CORPORATION**

By: /s/ Artin Betpera
Buzzi L. Shindler
Artin Betpera
Attorneys for Defendant Gen Digital Inc.